The STATE OF NEW YORK and Thomas C. Jorling as Trustee of the Natural Resources, Plaintiffs,

v.

LASHINS ARCADE CO., Lashins Arcade Corp., Rocco Tripodi, Bedford Village Cleaners, Inc., and Rocco Astrologo, Defendants.

No. 92 Civ. 8771 (CLB).

United States District Court, S.D. New York.

March 20, 1995.

**102**

Robert Herman, New York State Dept. of Law, New York City and Louis Oliva, New York State Dept. of Environmental Conservation, Tarrytown, NY, for plaintiffs.

Joel Sachs, Keane & Beane, P.C., White Plains, NY, David Riesel, Sive, Paget & Riesel, P.C., New York City, and William D. Spain, Jr., Spain & Spain, Mahopac, NY, for defendants.

### MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiffs, the New York State Department of Environmental Conservation and Thomas C. Jorling, Trustee of New York State's natural resources, move to strike the jury demand of Defendant Rocco Astrologo, former owner and operator of a dry cleaning establishment in Bedford, New York.

On March 12, 1993, Plaintiffs filed an Amended Complaint alleging that Defendants Lashins Arcade Co., Lashins Arcade Corp., Rocco Tripodi, Bedford Village Cleaners, Inc. and Rocco Astrologo violated Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act (hereinafter "CERCLA"), 42 U.S.C. § 9607. Also asserted are supplemental claims arising under state law for public nuisance, unjust enrichment, etc. By order dated May 13, 1994, this Court granted summary judgment in favor of Defendants Lashins Arcade Co. and Lashins Arcade Corp.

The claims in this case arise out of the contamination of soil and groundwater by hazardous waste at a location known as the Bedford Village Wells Site, which includes the Lashins Shopping Arcade ("the Shopping Arcade"). Between 1958 and 1963 Defendant Rocco Astrologo owned and operated a dry cleaning establishment in the Shopping Arcade. The Government alleges, and Mr. Astrologo denies, that during this time, Mr. Astrologo released hazardous wastes on the ground behind his dry cleaning shop, and showed the subsequent owner, Defendant Rocco Tripodi, how and where to do so. This activity is said to have polluted public and private water supply wells. Now, Plaintiffs move to strike the jury demand for claims pursuant to CERCLA.

Under "'the cardinal principle that [courts] will first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Curtis v. Loether,* 415 U.S. 189, 192 n. 6, 94 S.Ct. 1005, 1007 n. 6, 39 L.Ed.2d 260 (1974) (quoting *United States v. Thirty-seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404–05, 28 L.Ed.2d 822 (1971)), this Court begins by considering whether under the language of CERCLA, there exists an implied *statutory* right to a jury trial. As this Court has noted previously, "in determining the scope of an implied statutory right to a jury trial, it is essential to consider interests broader than those protected by the Constitution—including whether 'the crux of the case [is] a factual determination' of the sort traditionally made by common law juries." *Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F.Supp. 882, 886 (S.D.N.Y.1990).

This Court concludes from its analysis of CERCLA that Congress intended the right to a jury trial in a case where a plaintiff seeks a judgment for money damages for clean-up costs as well as injury to natural resources under Section 107 of CERCLA. Section 107, entitled "Liability," lists classifications of recovery:

(A) all cost of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the

reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a)(4)(A)–(D). The term "damages" is statutorily defined as meaning "damages [payable in money] for injury or loss of natural resources as set forth in section 9607(a) or 9611(b) of this title." 42 U.S.C. § 9601(6). In "[a]ctions involving natural resources," the money recovered by the Government "shall be available for use to restore, rehabilitate, or acquire the equivalent of such natural resources by the appropriate agencies of the Federal Government or the State government, but the measure of such damage shall not be limited by the sums which can be used to restore or replace such resources." 42 U.S.C. § 9607(f). Such liability seems essentially tortious in nature, because a defense to liability is established if a defendant proves "by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by . . . an act or omission of a third party other than an employee or agent of the defendant." 42 U.S.C. § 9607(b)(3). Accordingly, a defendant may escape liability for money damages "if it either succeeds in proving that its [actions] did not contribute to the release and the clean-up costs that followed, or contributed at most only to a divisible portion of the harm." *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 722 (2d Cir.1993).

Here, Plaintiffs seek to recover money under Section 107(a), Subparagraphs (A) and (C). The Amended Complaint asserts "Defendant Astrologo is liable to the Plaintiff State pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) for all natural resource damages and all response costs incurred and to be incurred by the Plaintiff State." (Amended Complaint ¶ 85). Specifically, the Amended Complaint alleges "[t]he release of hazardous substances into the environment has caused injury to, destruction of and/or loss of the natural resources of the State of New York within the meaning of §§ 101(16) and 107(a) of CERCLA, 42 U.S.C.

§§ 9601(16) and 9607(a)." (Amended Complaint ¶ 83). Furthermore, "[t]he release of hazardous substances into the environment has caused Plaintiff State of New York to incur response costs, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), does continue and will continue to cause the State to incur response costs in the future, all of which costs of response are and will be not inconsistent with the national contingency plan." (Amended Complaint ¶ 84).

These assertions involve factual issues analogous to an action for damage to real property by tort or trespass. The fact finder would consider whether natural resources (interests in land) were damaged and if so, whether Defendant Astrologo proved by a preponderance of the evidence that his actions did not contribute to the release of the pollutant and the clean-up costs that followed, or contributed at most only to a divisible portion of the harm. The measure of damages for natural resource injury is not limited to restoration or replacement of such resources. 42 U.S.C. § 9607(f). These money damage issues go beyond mere restitution, involving matters "particularly appropriate for resolution by a trial jury." *Vicinanzo*, 739 F.Supp. at 886 (quoting *Paladino v. Taxicab Industry Pension Fund*, 588 F.Supp. 37, 39 (S.D.N.Y.1984)). This Court concludes that Congress impliedly preserved a right to a jury trial here where a money judgment is sought to be collected from a wrongdoer.

Were this not so, this Court would find a *Constitutional* right to a jury trial. As the relief sought by Plaintiffs under CERCLA is at least partly "legal" in nature, the Seventh Amendment to the United States Constitution supports this alternate ground. The Seventh Amendment requires that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The phrase "Suits at common law" refers to "suits at which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] admin-

**104**

istered." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, et al.,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990) (citing *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 7 L.Ed. 732 (1830)).

■ Maintaining the common law jury as a fact finding body in cases where people are to be mulcted has "such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right should be scrutinized with the utmost of care." *Beacon Theaters v. Westover,* 359 U.S. 500, 501, 79 S.Ct. 948, 952, 3 L.Ed.2d 988 (1959) (quoting *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935)).

■ The right to a jury trial is not lost where legal and equitable issues are presented in a single case or where legal issues are only 'incidental' to equitable issues. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 470, 82 S.Ct. 894, 896, 8 L.Ed.2d 44 (1962). "[L]egal claims are not magically converted into equitable issues by their presentation to a court of equity." *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). The United States Supreme Court has long recognized that "[t]he Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis,* 415 U.S. at 194, 94 S.Ct. at 1008. However, the constitutional right to a jury trial does not depend on whether " 'the issues [presented by the claim] are typical grist for the jury's judgment.' " *Teamsters Local 391 v. Terry,* 494 U.S. 558, 565 n. 4, 110 S.Ct. 1339, 1345 n. 4, 108 L.Ed.2d 519 (1990) (quoting Stevens, J., at 583, concurring in part and in the judgment). The relevant inquiry focuses on the nature of the claims and whether the remedy sought is "legal or equitable in nature." *Tull v. United States,* 481 U.S. 412, 418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). In *Tull,* the Court held that the right to a jury trial extends to Section 309(d) of the Clean Water Act, which provides civil penalties to punish culpable polluters. *Id.* at 422, 107 S.Ct. at 1838.

■ A plain reading of CERCLA reveals that pure equitable restitution of money is not the focus of Section 107. By permitting a plaintiff to seek "damages for injury to, destruction of, or loss of natural resources," the fact finder must determine whether or not injury to a property interest occurred. The damages recovered "shall not be limited by the sums which can be used to restore or replace such resources," 42 U.S.C. § 9607(f), accordingly, this Court need not consider when or under what circumstances "pure" restitution of money may be imposed by a court of equity without the protection of a jury. As noted previously, recovery for loss of natural resources is similar to an action in tort or trespass. The fact that "costs" are also recoverable, both clean-up costs and expenses, is not determinative. Expenses and costs incurred by tort victims customarily are recoverable as part of money damages. Accordingly, with respect to the claim for natural resource damage, the Seventh Amendment protects a right to a jury trial, and in a case where the other issues are mixed, the entire case must be tried to a jury. *See Dairy Queen,* 369 U.S. at 470, 82 S.Ct. at 896.

Plaintiffs' motion is denied. The case will be placed on the Court's calendar for trial to a jury.

SO ORDERED.