2008 VT 42

# State of Vermont v. Irving Oil Corporation

[955 A.2d 1098]

No. 06-375

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed April 11, 2008

*William H. Sorrell*, Attorney General, *William E. Griffin*, Chief Assistant Attorney General, and *Mark J. Di Stefano*, Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

*James W. Spink* and *Jon T. Alexander* of *Spink & Miller, PLC*, Burlington, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** The question presented is whether a State environmental-enforcement action seeking declaratory and injunctive relief, recovery of response costs, and civil penalties triggers the right to a jury trial under Chapter I, Article 12 of the Vermont Constitution. We hold that the relief sought by the State in this case is essentially equitable in nature and, therefore, that

the right to trial by jury does not attach. The trial court's conclusion to the contrary is reversed.

¶ 2. The facts and procedural history may be summarized as follows. In December 2003, the State of Vermont — through the Agency of Natural Resources (ANR) — filed a complaint in superior court against defendant Irving Oil Company. The complaint alleged that, on or about July 24, 1997, a delivery truck owned and operated by defendant overturned on the Quechee Road in Hartland, Vermont, releasing gasoline into the surrounding area. When defendant later refused to assume responsibility for the investigation and remediation of the resulting contamination, the State was compelled to do so, incurring substantial costs. The State's complaint alleged that defendant was strictly liable under a provision of the Waste Management Act, 10 V.S.A. § 6615(a), for abatement of the release and the costs of remediation, and sought the following relief: (1) a declaratory judgment stating that defendant was strictly liable for abatement of the gasoline contamination at the site; (2) an injunction ordering defendant to assume responsibility for the ongoing investigation and cleanup of the site; (3) an order requiring defendant to reimburse the State for expenses that the State had been compelled to incur in investigating and remediating the site; and (4) civil penalties for violation of the prohibition against the release of hazardous materials. *Id.* §§ 6615(a)(4), 8221(b).[1]

¶ 3. Defendant's answer to the complaint included a demand for jury trial. The State, in response, moved to strike the demand, asserting that its claims were equitable in nature and therefore not subject to trial by jury. In June 2006, the trial court issued a written decision denying the State's motion in most, but not all, respects. The parties had agreed that the claims for declaratory and injunctive relief were equitable in nature and not subject to jury trial, and the court so ruled. As to the State's request for reimbursement of investigation and cleanup costs, however, the

---

[1] Section 6615(a)(4) provides that a person responsible for the release of hazardous materials shall be liable for "abating such release" and the "costs of investigation, removal and remedial actions incurred by the state which are necessary to protect the public health or the environment." Section 8221(b) provides that, in an environmental enforcement action, a court may, inter alia: "(1) enjoin future activities; (2) order remedial actions to be taken to mitigate hazard to human health or the environment; . . . (5) order reimbursement from any person who caused governmental expenditures for the investigation, abatement, mitigation, or removal of a hazard to human health or the environment; (6) levy a civil penalty."

court concluded that such a demand for monetary relief was a "classic claim for damages" at law and therefore triggered the right to a jury under Chapter I, Article 12 of the Vermont Constitution.[2] In addition, the court concluded that the State's claim for civil penalties was analogous to a common-law action in debt traditionally tried in courts of law, and therefore also subject to trial by jury, although the amount of any penalties imposed would be determined by a judge, not a jury.[3]

¶ 4. The State moved for permission to take an interlocutory appeal of the ruling. Although the trial court denied the request, we granted the State's renewed motion to address the important legal and constitutional issues raised. For the reasons set forth below, we reverse the decision of the trial court.

## I.

¶ 5. Although the right to a civil jury trial enjoys federal constitutional protection under the Seventh Amendment,[4] that provision has not been applied to the states. See *Curtis v. Loether*, 415 U.S. 189, 192 n.6 (1974) (observing that "[t]he Court has not

---

[2] Chapter I, Article 12 provides: "That when any issue in fact, proper for the cognizance of a jury is joined in a court of law, the parties have a right to trial by jury, which ought to be held sacred."

[3] The complaint had also asserted common claims for equitable subrogation and nuisance, and the court addressed these as well. Concerning the former, the court acknowledged that it could not discern "what the subrogation claim is based upon" but ruled, nevertheless, that subrogation was traditionally considered an equitable remedy not subject to trial by jury. Defendant has not cross-appealed from the court's ruling, and we therefore lack jurisdiction to address the issue. See *Perry v. Med. Practice Bd.*, 169 Vt. 399, 402-03, 737 A.2d 900, 903 (1999) (failure to raise issue by cross-appeal divests this Court of jurisdiction); *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 255, 719 A.2d 415, 420 (1998) (appellee seeking to challenge aspects of trial court's decision must file timely cross-appeal). As to the nuisance claim, the court determined that the right to a jury trial applied to the extent that the State sought relief in the form of money damages, and did not apply to the extent that it sought an order of abatement. Our holding, set forth in the discussion which follows, that the prayer for damages is inextricably intertwined with the State's request for equitable relief, and is not subject to trial by jury, applies with equal force to the nuisance claim, which therefore requires no separate analysis.

[4] The Seventh Amendment to the United States Constitution provides:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

held that the right to jury trial in civil cases is an element of due process applicable to state courts through the Fourteenth Amendment"). In addressing claims of this nature, therefore, we have historically looked to our own Constitution which, like almost every other state constitution, guarantees the right to jury trial "to the extent that it existed at common law at the time of the adoption of the [C]onstitution." *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 155, 624 A.2d 1122, 1125 (1992); see generally M. Moses, *What the Jury Must Hear: The Supreme Court's Evolving Seventh Amendment Jurisprudence*, 68 Geo. Wash. L. Rev. 183, 185, 185 nn.10-11 (2000) (noting that the civil jury right is constitutionally based in all states but two, where it is provided by statute, and that "[f]or the most part, the . . . analysis of whether a particular case is entitled to a jury trial is similar under state or federal law"). Claims traditionally tried in a "court of law" to which the constitutional right attaches are to be distinguished, however, from those that are "equitable" in nature, which were traditionally tried solely before a judge and therefore fall outside the scope of the right. See *In re Estate of Gorton*, 167 Vt. 357, 365, 706 A.2d 947, 952 (1997) ("[E]ntitlement to a jury trial 'is dependent upon the relief requested; if the relief requested is equitable, no right to jury trial exists.'" (quoting *In re Estate of Archambault*, 147 Vt. 649, 649, 520 A.2d 154, 154 (1986) (mem.))).

 ¶ 6. As early as *Plimpton v. Town of Somerset*, 33 Vt. 283, 291-92 (1860), moreover, we held that the right to a civil jury trial under Article 12 is not restricted to those common-law causes of action that existed in 1793. On the contrary, where — as here — a claim is asserted under a statutory scheme that is otherwise silent on the right to a jury trial, the court must examine the nature of the action and its "fitness to be tried by a jury." *Id.* at 292. As the Court in *Plimpton* explained:

> The [C]onstitution was intended to provide for the future as well as the past . . . . Hence it is not *the time* when the violated right first had its existence, nor whether the statute which gives rise to it was adopted before or after the [C]onstitution, that we are to regard as the criterion of the extent of this provision of the [C]onstitution; but it is the nature of the controversy between the parties, and its fitness to be tried by a jury according to the rules of the common law that must decide the question.

*Id.* at 291-92 (emphasis in original).

¶ 7. More recently, in *Hodgdon*, 160 Vt. at 155, 624 A.2d at 1125, we recognized that the United States Supreme Court has applied a "similar test," under the Seventh Amendment, to determine whether the right to a jury trial attaches to statutory claims. First, the court must identify the closest eighteenth-century analogue to the statutory cause of action and ascertain whether it was traditionally tried to a jury or a court. *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990); *Tull v. United States*, 481 U.S. 412, 417-18 (1987); *Curtis*, 415 U.S. at 195-96. Second, the court must "examine the remedy sought and determine whether it is legal or equitable in nature." *Tull*, 481 U.S. at 417-18. Of the two tests, however, the Court has emphasized that "[t]he second inquiry is the more important in [the] analysis." *Terry*, 494 U.S. at 565; accord *Tull*, 481 U.S. at 421 ("We reiterate our previously expressed view that characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action . . . ." (quoting *Curtis*, 415 U.S. at 196)). Indeed, some members of the high court have called for dispensing altogether with the "abstruse" search for what often prove to be elusive and imprecise historical analogues in favor of an exclusive focus on the nature of the *relief* sought. *Ross v. Bernhard*, 396 U.S. 531, 538 n.10 (1970); see, e.g., *Terry*, 494 U.S. at 578 (Brennan, J., concurring) (rejecting the historical inquiry as "impracticable and unilluminating" and urging that Seventh Amendment questions be decided based "on the nature of the relief sought"); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 224-25 (2002) (Ginsburg, J., dissenting) (deriding Court's reliance on "ancient classification[s]" and "anachronistic rules" in resolving the right to jury trial under the Seventh Amendment); T. Thomas, *Justice Scalia Reinvents Restitution*, 36 Loy. L.A. L. Rev. 1063, 1064, 1067 (2003) (noting the difficulties of distinguishing between "equitable and legal restitution" and of relying on "historical distinctions [that] have long been forgotten").

¶ 8. Characterizing the "remedy sought" as either legal or equitable is not without its own difficulties, however, and has often led to disagreements on the Supreme Court. See generally, e.g., *Terry*, 494 U.S. 558 (deciding whether employees' action seeking remedy of backpay for union's alleged breach of duty of fair

representation was legal or equitable for purposes of Seventh Amendment resulted in sharply fractured Court). The high court has generally agreed, however, that while an action for money damages is "the traditional form of relief offered in the courts of law," not every "award of monetary relief must *necessarily* be 'legal' relief." *Curtis*, 415 U.S. at 196 (emphasis added). Indeed, the Supreme Court has identified two broad exceptions to the general rule. The first exception applies where damages "are restitutionary, such as in actions for disgorgement of improper profits." *Terry*, 494 U.S. at 570 (quotation omitted). "Second, a monetary award incidental to or intertwined with injunctive relief may be equitable." *Id.* at 571 (quotation omitted).

¶ 9. Following the Supreme Court's two-part analysis, the parties here vigorously debate, first, the appropriate historical antecedent to a claim for response costs under the Waste Management Act, and, second, the proper characterization of the remedy sought as either legal or equitable. Defendant maintains in this regard that a governmental action for recovery of environmental cleanup costs is most analogous to a common-law action in quasi-contract, which it argues was traditionally tried at law, while the State argues that its claim is analogous to one for restitution, public nuisance, or equitable subrogation, all purportedly equitable claims tried to a court rather than a jury. Acknowledging the greater importance of the second inquiry, however, the State argues strenuously that recovery of environmental investigation and response costs incurred by the State represents a restitutionary remedy for the return of money expended on defendant's behalf, relief traditionally characterized as equitable in nature. See *Gorton*, 167 Vt. at 365, 706 A.2d at 952 (holding that damage claim for reimbursement of expenses incurred in performance of oral agreement was "more accurately a request for restitution, to return them to their former position, and therefore, it is . . . an equitable remedy"); see generally 1 D. Dobbs, Law of Remedies § 4.1(2), at 557 (2d ed. 1993) ("The fundamental substantive basis for restitution is that the defendant has been unjustly enriched by receiving something, tangible or intangible, that properly belongs to the plaintiff."). The State relies as well on a uniform line of decisions holding that cost-recovery actions under the federal Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9607(a)(4), 9613, are in the nature of equitable restitution actions and

therefore not triable to a jury under the Seventh Amendment. See, e.g., *Hatco Corp. v. W.R. Grace & Co.-Conn.*, 59 F.3d 400, 412-14 (3d Cir. 1995); *United States v. Northeastern Pharm. & Chem. Co.*, 810 F.2d 726, 749 (8th Cir. 1986); *United States v. Lang*, 870 F. Supp. 722, 723 (E.D. Tex. 1994); *United States v. Mottolo*, 605 F. Supp. 898, 913 (D.N.H. 1985), *cited with approval in Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1078 (1st Cir. 1986).[5]

¶ 10. Defendant counters that the CERCLA cases are conclusory in their reasoning and analysis and that, in any event, their authority has been largely eroded by the more recent Supreme Court decision in *Great-West*. In a five-four decision, *Great-West* held that a provision of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(3), that empowered health-plan participants to obtain "appropriate equitable relief" to redress violations did not authorize an action by an insurer seeking reimbursement from a tort settlement entered into by the plan beneficiaries. 534 U.S. at 210-15. The Court explained that the action was simply one "to impose personal liability on respondents for a contractual obligation to pay money — relief that was not typically available in equity." *Id.* at 210. In so holding, the Court rejected the petitioners' assertion that their suit was for "restitution" and therefore necessarily equitable in nature, and drew a historical distinction between "restitution at law," which simply provided for the payment of money for some benefit received by the defendant, and "restitution in equity," which generally consisted of an action to place a constructive trust upon, or to disgorge, money or property "identified as belonging in good conscience to the plaintiff [which] could clearly be traced to particular funds or property in the defendant's possession." *Id.*

---

[5] Although defendant cites *In re Acushnet River & New Bedford Harbor*, 712 F. Supp. 994, 1001 (D. Mass. 1989), as an exception to this line of federal decisions, that case held only that a jury trial was required in an action under CERCLA for natural resource damages; it did not concern a claim, as here, for recovery of response costs. The trial court also relied on *New York v. Lashins Arcade Co.*, 881 F. Supp. 101, 102-03 (S.D.N.Y. 1995), *affirmed on other grounds*, 91 F.3d 353, 362 (2d Cir. 1996), a decision in which the district court did, in fact, hold that a claim for response costs under CERCLA triggered the Seventh Amendment right to jury trial. On appeal, however, the Second Circuit — while noting that the issue had become moot — nevertheless "caution[ed] . . . that the district court's ruling stands alone . . . in opposition to the overwhelming weight of authority on this issue." 91 F.3d at 362 n.7.

at 213. Although *Great-West* was not a Seventh Amendment case, defendant here argues that it nevertheless eviscerates the State's claim that its request for reimbursement of response costs is anything other than a garden-variety action at law for monetary damages.

¶ 11. While certainly interesting and well argued, neither the historical debate over common-law analogues nor the doctrinal dispute over the nature of restitution represents, in our view, the correct basis of decision in this case. We are persuaded, rather, that regardless of its common-law antecedents or remedial category, the State's request for reimbursement of environmental investigation and response costs serves largely as an adjunct to its claim for declaratory and injunctive relief and therefore is equitable in nature. As noted, the Supreme Court has recognized that a "monetary award incidental to or intertwined with injunctive relief may be equitable," *Terry*, 494 U.S. at 571 (citation omitted), and *Great-West* did nothing to disturb this principle. See *Great-West*, 534 U.S. at 218 n.4 (acknowledging and distinguishing cases where monetary relief was deemed to be "an integral part of an equitable remedy"). Here, the State's damage claim is incidental to and inextricably intertwined with its request for injunctive relief in that the damages sought are merely the expenses incurred by the State in the absence of an injunction; the fundamental remedy the State is seeking is *performance* — an order compelling defendant to assume responsibility for the investigation and remediation of the site — and the response costs incurred prior to that order are precisely the sort of monetary relief that a court of equity may award when a party has not performed in a timely fashion. See Restatement (Second) of Contracts § 358 & cmt. c (1981) (providing generally that "[i]n addition to specific performance or an injunction, damages and other relief may be awarded" and explaining, as an example, that "damages for the delay [in performance] will usually be appropriate").

¶ 12. This principle is well illustrated in *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996), where the plaintiffs, retired employees or their surviving spouses, brought an action under the federal Labor-Management Relations Act, 29 U.S.C. § 185, claiming that their former employer had breached a collective bargaining agreement by imposing certain copayments and

deductibles as a condition of the payment of health benefits. The complaint sought an injunction to enforce the provisions of the agreement, and damages to compensate the plaintiffs for their increased deductibles and copayments. The district court struck the defendant's demand for jury trial, and the appeals court affirmed, explaining that the damages in question were precisely:

> the type of monetary relief that courts, and the *Restatement*, envision as equitable relief; they are incidental to the grant of equitable relief, yet are necessary to afford complete relief. A court does not err in denying a jury trial where the monetary award sought is incidental to, or intertwined with, equitable relief.

*Id.* at 661. Here, similarly, the damages sought by the State for response costs incurred are incidental to the request for an injunction to compel defendant to assume full responsibility for the cleanup, yet necessary to provide a complete remedy.

¶ 13. A similar analysis, in an altogether different context, was applied by the court in *Entergy Ark., Inc. v. Nebraska*, 358 F.3d 528 (8th Cir. 2004). The plaintiff there, a five-state commission formed to develop a nuclear waste disposal facility, sued the State of Nebraska (one of the commission members), alleging that it had wrongfully denied a facility license in violation of the five-state compact and seeking declaratory relief, an injunction to compel compliance, and damages for funds expended on research and development to construct the facility. The trial court granted the plaintiff's motion to strike Nebraska's jury demand and, following a bench trial, declared that Nebraska had violated the compact. The court awarded damages in excess of $97 million for the funds expended but rejected an award of injunctive relief to compel completion of the licensing process as impractical in view of Nebraska's withdrawal from the compact. In affirming, the Eighth Circuit concluded that "[t]he request for damages was intertwined with the request for injunctive relief in that the Commission's prayer for relief asked for compensatory damages for losses already incurred in the absence of an injunction. Such damages are appropriately awarded by a court of equity . . . ." *Id.* at 546.

¶ 14. Similar reasoning underlay the court's decision, in still another statutory setting, in *Adams v. Cyprus Amax Minerals Co.*, 149 F.3d 1156 (10th Cir. 1998), an ERISA action by former

employees claiming that they had been wrongfully denied benefits under a retirement plan, and requesting declaratory and injunctive relief to enforce their rights under the plan and damages to recover benefits denied. In holding that the plaintiffs had no right to a jury trial, the Tenth Circuit concluded that the prayer for damages was essentially an adjunct to the request for equitable relief to declare and enforce the plaintiffs' rights and that "[c]onsequently, [plaintiffs'] claim for monetary relief is inextricably intertwined with equitable relief." *Id.* at 1162; see also *Curtis v. Alcoa, Inc.*, No. 3:06-CV-448, 2007 WL 3047123, at **2-3 (E.D. Tenn. 2007) (plaintiff/retiree's action under ERISA and LMRA seeking declaratory and injunctive relief and damages did not trigger Seventh Amendment right to jury trial where damage claim was "incidental to and intertwined with" equitable claims).

¶ 15. Consistent with these decisions, we conclude that the overarching remedy sought by the State here is broad declaratory and injunctive relief to confirm defendant's liability for the contamination and to compel defendant to assume responsibility for its abatement. The prayer for reimbursement of response costs incurred to date is merely "incidental to and intertwined with" that effort; it complements the equitable remedy and serves to afford complete relief. Accordingly, we conclude that the right to jury trial under Chapter I, Article 12 does not attach.

¶ 16. Although defendant maintains that such a conclusion contravenes the United States Supreme Court's seminal decisions in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), that argument is unpersuasive. These cases held that, where legal and equitable issues are presented in the same case, a court cannot properly deny a litigant a jury trial on the legal issues by trying the equitable issues first, *Beacon Theatres*, 359 U.S. at 510, or characterizing the legal claim as insignificant or "incidental." *Dairy Queen*, 369 U.S. at 471. Both decisions presupposed the existence of separate and independent legal issues, albeit of less significance than the equitable issues raised. Accordingly, neither decision subverts the principle subsequently articulated by the high court in such cases as *Curtis*, *Tull*, and *Terry*, that a prayer for monetary damages may be intertwined with and subsumed within a broader request for equitable relief where, as here, it serves principally to complete such relief. See *Golden*, 73 F.3d at 661-62 (determination that request for monetary damages did not

trigger Seventh Amendment right to jury trial where it was inextricably intertwined with and served to complete equitable relief did not contravene principles of *Beacon Theatres* and *Dairy Queen).* Accordingly, we hold that defendant was not entitled to a jury trial on this issue.[6]

## II.

¶ 17. The State additionally contends the trial court erred in finding that defendant was entitled to jury trial on the claim for civil penalties under 10 V.S.A. § 8221(b)(6).[7] The court relied principally on *Tull,* where the Supreme Court compared a civil-penalty provision of the federal Clean Water Act to an eighteenth-century common-law action in debt traditionally triable in a court of law, and characterized the relief sought as essentially punitive

---

[6] Defendant also appears to renew on appeal, albeit summarily, an argument developed more fully below that the damage claim should be considered legal in nature because it seeks reimbursement of funds from the Vermont Petroleum Cleanup Fund (PCF) used to purchase bottled water for residents whose wells were allegedly contaminated by the gasoline spill. Funded by regulatory fees from storage tank owners and operators, the PCF authorizes disbursements for the costs of remedial actions to "clean up spills of oil and other petroleum products," 10 V.S.A. § 1941(b)(8), as well as for the "costs incurred in compensating third parties for bodily injury and property damage." *Id.* § 1941(b)(2). Apparently because the State classified the disbursements under § 1941(b)(2), defendant maintains that the claim here must be characterized as an action at law for recovery of third-party property damages. The State's accounting classification of the monies expended does not, however, alter the essentially equitable nature of the State's action here, in which the prayer for expenses is intertwined with and subsidiary to the effort to compel abatement.

[7] As noted, this section provides that, in a civil enforcement action, a court may "levy a civil penalty" and further directs that "[i]n fixing the amount of the penalty the court shall apply the criteria set forth in subsection 8010(b)." 10 V.S.A. § 8221(b)(6). Section 8010(b) sets forth the following criteria:

(1) the degree of actual or potential impact on public health, safety, welfare and the environment resulting from the violation;

(2) the presence of mitigating circumstances, including unreasonable delay by the secretary in seeking enforcement;

(3) whether the respondent knew or had reason to know the violation existed;

(4) the respondent's record of compliance;

(5) the economic benefit gained from the violation;

(6) the deterrent effect of the penalty;

(7) the state's actual costs of enforcement; and

(8) the length of time the violation has existed.

10 V.S.A. § 8010(b)(1)-(8).

in nature, a remedy also traditionally available only at law. 481 U.S. at 423 n.7 ("The more important characteristic of the remedy of civil penalties is that it exacts punishment — a kind of remedy available only in courts of law."). In keeping with our own state-law approach to civil penalties, however, and in light of the civil-enforcement statute in question, we do not find *Tull* persuasive. As we explained in *Agency of Natural Resources v. Riendeau*, 157 Vt. 615, 622, 603 A.2d 360, 364 (1991), in a similar environmental-enforcement setting: "[t]he primary purpose of civil penalties is *not* punishment. Rather, these penalties serve a remedial purpose by making noncompliance at least as costly as compliance. They also reimburse the government for enforcement expenses and other costs generated by the violation." (citations omitted and emphasis added).[8]

¶ 18. A review of the statutory factors to be considered by a court in fixing the amount of any civil penalties in an action of this nature underscores their essentially equitable character. These include, to be sure, several criteria concerning the defendant's culpability, such as whether it "knew or had reason to know the violation existed" and its "record of compliance," 10 V.S.A. § 8010(b)(3), (4), but on the whole, the factors reflect a primary legislative concern with protecting the public health and safety and preventing unjust enrichment at the expense of the State and the public. See *id.* § 8010(b)(1), (5), (7) (requiring consideration of "the degree of actual or potential impact on public health, safety, welfare and the environment," the "economic benefit gained from the violation," and "the state's actual costs of enforcement"); see also *id.* § 8001 (explaining that the legislative purposes underlying the secretary's civil-enforcement powers include the "protection of environmental and human health" and "prevent[ing] the unfair economic advantage obtained by persons who operate in violation of environmental laws"). These considerations strongly suggest, in turn, a legislative intent to assign the careful balancing of equities that must necessarily underlie the decision to impose such civil penalties, and the amount of any penalty to be assessed, with the agency traditionally entrusted with such decisions: a judge rather than a jury. See *DiPirro v. Bondo Corp.*, 62 Cal. Rptr. 3d 722, 747

---

[8] *Riendeau* was discussing the imposition of civil penalties for discharges of waste in violation of 10 V.S.A. § 1274, rather than the assessment of civil penalties under § 8221(b)(6), but the remedial goals are similar.

(Ct. App. 2007) (holding that "[w]here, as here, the [state environmental-enforcement] statute has delegated the assessment of civil penalties in accordance with a highly discretionary calculation that takes into account multiple factors, this is the kind of calculation traditionally performed by judges rather than a jury, and does not require a jury trial").

¶ 19. Our holding that the civil-penalties remedy under § 8221(b) is essentially equitable finds additional support in decisions from other states reaching the same conclusion in similar environmental-enforcement contexts. See, e.g., *Comm'r of Envtl. Protection v. Conn. Bldg. Wrecking Co.*, 629 A.2d 1116, 1123 (Conn. 1993) (holding that *Tull* did not mandate a jury trial in a state environmental-enforcement action for injunctive relief and civil penalties where the civil-penalty statute contained multiple factors, including equitable restitution, and the legislature's statement of purpose emphasized "the importance of protecting and maintaining the natural resources of the state and of preserving the status quo," goals that were "equitable . . . in nature"); *DiPirro*, 62 Cal. Rptr. 3d at 748 (holding that "the statutory remedies afforded by the [California Safe Drinking Water and Toxic Enforcement] Act, including civil penalties, are not damages at law, but instead constitute equitable relief appropriate and incidental to enforcement of the Act, which do not entitle the plaintiff to a jury trial"); see also *State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n*, 49 P.3d 894, 909 (Wash. Ct. App. 2002) (distinguishing *Tull* and holding that, in an action for civil penalties and injunctive relief under state Public Disclosure Act, "civil penalties are incidental to the injunctive relief" and therefore do not trigger the right to jury trial).

¶ 20. We hold, in conclusion, that neither the State's prayer for recovery of response costs under 10 V.S.A. § 6615, nor its request for civil penalties pursuant to 10 V.S.A. § 8221(b)(6), requires a jury trial under Chapter I, Article 12 of the Vermont Constitution.

*Those portions of the superior court order denying the State's motion to strike the demand for jury trial are reversed.*