**SUPERIOR COURT**
**Washington Unit**

2017 SEP 15 ' A 8: 03

**CIVIL DIVISION**
**Docket No. 544-9-16 Wncv**

**TOWN OF LOWELL, VERMONT**
   **Plaintiff**

v.

FILED

**VERMONT LEAGUE OF CITIES AND TOWNS**
**and VLCT PROPERTY AND CASUALTY**
**INTERMUNICIPAL FUND, INC.**
   **Defendants**

## JUDGMENT

Plaintiff's claim having been decided in the favor of Defendants by summary judgment ruling entered this day, judgment is entered in favor of the Defendants and Plaintiff shall take nothing on the claim.

Dated this 14th day of September, 2017.

Mary Miles Teachout
Superior Judge

STATE OF VERMONT

**SUPERIOR COURT**
Washington Unit

CIVIL DIVISION
2017 SEP 15 · A Docket No. 544-9-16 Wncv

TOWN OF LOWELL, VERMONT
Plaintiff

FILED

v.

VERMONT LEAGUE OF CITIES AND TOWNS
and VLCT PROPERTY AND CASUALTY
INTERMUNICIPAL FUND, INC.
Defendants

## DECISION
### Cross-Motions for Summary Judgment

The Town of Lowell incurred costs for attorneys' fees in defending an Agency of Natural Resources (ANR) enforcement action in which it ultimately prevailed. The ANR action concluded with a voluntary dismissal and no imposition of liability. The Town now seeks to recover its costs for attorneys' fees under the terms of its insurance policy with the Vermont League of Cities and Towns (VLCT) Property and Casualty Intermunicipal Fund, Inc. (PACIF), of which it is a member. Defendant relies on an exclusion and the dispute is over whether the exclusion bars coverage at all and thus bars defense costs. The parties have filed cross-motions for summary judgment. Oral argument was heard on July 11, 2017. The Town is represented by Attorney Ron Shems, and the Defendant is represented by Attorney Christopher Ekman.

In 2015, ANR served the Town with an administrative order documenting its findings that the Town had improperly moved and replaced a culvert without a permit in violation of various statutes administered by ANR. The culvert had failed and discharged a large amount of "earthen material." The ANR Order provided as follows:

> Pay a penalty of $85,000 no later than thirty (30) consecutive calendar days
> following the effective date of this Order. . . .

> The above penalty amount may not necessarily include all the costs incurred by
> the Secretary for the enforcement of the above described violation(s) or the full
> amount of economic benefit gained by the Respondent from the violation(s). The
> Secretary reserves the right to augment the above stated penalty through evidence
> presented at hearing. In accordance with 10 V.S.A. § 8010, the penalty may be
> increased by the total costs incurred by the Secretary for the enforcement of this
> matter and by the total amount of economic benefit gained by the Respondents
> from the violation(s), each according to proof at the hearing.

The Town repeatedly sought a defense from the VLCT and PACIF, which consistently denied any defense, claiming that the ANR claim was excluded from coverage by § V-B(5) of the Fund policy. ANR eventually voluntarily dismissed its action against the Town, which incurred no liability.

The coverage at issue is Public Officials Liability Coverage, which provides coverage for claims against the Town for "Wrongful Act(s)." Fund § V-A(1)(a). A wrongful act is "any actual or alleged violation of any federal, state, or local civil rights, or breach of duty by the Member in the discharge of duties for the Named Member, individually or collectively." Wrongful act coverage is not generally limited by who asserts the wrongful act against the member. However, the exclusion at Fund § V-B(5) provides that the coverage does not apply to any claim "[f]or any loss which represents cost, civil fine, penalty, or expense levied or imposed against any Member arising from any complaint or enforcement action from any federal, state, or local governmental regulatory agency." Thus, in broad terms, coverage exists when a person or entity files a claim against the Town for a wrongful act, but there is no coverage when the government files a claim against the Town for violation of a government regulation.

On its face, this exclusion appears to apply to the ANR action at issue here. ANR is a state governmental regulatory agency. The administrative order represents a complaint or enforcement action against the Town. It appears to impose a "cost, civil fine, penalty, or expense" on the Town.

The Town concedes that this is so in general. It further concedes that the $85,000 penalty described in the administrative order is excluded from coverage because it is a penalty. It argues, however, that the second paragraph quoted above, in which ANR reserved the right to recapture "economic benefit," represents a claim for damages, not a penalty, and thus the ANR action was covered at least in part. It argues that the legislature clarified that recapturing economic benefit under 10 V.S.A. § 8010 must be treated as damages and not as a penalty in the 2008 amendments to § 8010 and related statutes. 2007, Adj. Sess., No. 191. Analysis of this argument requires review of both the statute under which the enforcement action was brought, 10 V.S.A. § 8010, and the language of the applicable provisions of the insurance policy.

Prior to the 2008 amendment, although ANR was entitled by statute to seek recovery for "economic benefit" in enforcement actions, the term was not statutorily defined. The Environmental Court interpreted the phrase as "wrongful profits," but in 2003, the Supreme Court rejected that analysis. It explained that "[u]sing a wrongful profits analysis significantly overinflates the actual economic benefit to the violator; rather than leveling the playing field, it puts him or her at a marked disadvantage." *Agency of Nat. Res. v. Deso*, 2003 VT 36, ¶ 8, 175 Vt. 513. "[W]hen the violation gives the violator a competitive advantage, such profits are an economic benefit subject to penalty by confiscation." *Id.* ¶ 9. There was no ambiguity in *Deso* that recapturing economic benefits is part of the Agency *penalty* analysis. In part, the 2008 amendment responds to *Deso* by rejecting it. "Economic benefit" is now statutorily defined to mean the "reasonable approximation of any gain, advantage, *wrongful profit*, or delayed avoided cost, financial or otherwise, obtained as a result of a violation. *Economic benefit shall not be limited to only competitive advantage obtained.*" 10 V.S.A. § 8002(11); 2007, Adj. Sess., No. 191, § 1 (emphasis added).

2

In sum, while the amendment changed the definition of "economic benefit," it did not change the fact that the context was still consequences of an enforcement action for a violation, with a purpose of imposition of a consequence so serious as to deter violations. Nothing about the amendment implies that recapturing economic benefits became something other than a type of penalty or a standard used to measure an amount of penalty.

As to the terms of the policy, the Town's argument depends on the premise that the Fund sets up a dichotomy between "damages," which are covered, and "civil penalties," which are not covered. Fund § V-A(1)(b) says that the Fund will "[d]efend the Member against any claim or suit seeking damages as covered above [in subsection (a)]." Fund § V-A(1)(a) provides coverage for "Ultimate Net Loss" due to a "Wrongful Act." The word "damages" is not used. Ultimate net loss is defined as "the total sum that the Member becomes obligated to pay by reason of Wrongful Act(s) claims, through either adjudication or compromise." Fund § V-C(2). Again, the word "damages" is not used. It appears from these provisions that the word "damages" is used as a proxy for financial loss but these provisions do not attempt to distinguish financial loss from penalty. Thus, they cannot have the effect of overriding the terms of the exclusion.

The coverage protects against wrongful acts. The exclusion at Fund § V-B(5) describes a type of wrongful act for which there is no coverage: enforcement actions by governmental agencies imposing a "cost, civil fine, penalty, or expense."

The 'damages versus civil penalty' dichotomy proposed by the Town would likely lead to coverage, or at least a defense, in most if not all government agency enforcement actions, which is precisely what the exclusion excludes. The Town takes the position that capturing a wrongdoer's "economic benefit" is remedial, and thus in the nature of damages, whereas a penalty is punitive. The expression "damages" is not so precise, however. While it often connotes compensation for a harm, it is also used to connote punitive components of judgments, such as punitive damages. As described above, the Fund document itself does not appear to use the expression "damages" in the way that the Town advocates.

There is no reason that a consequence with a punitive purpose cannot also be remedial or that a penalty must be exclusively punitive. See *State v. Irving Oil Corp.*, 2008 VT 42, ¶ 17, 183 Vt. 386 (explaining in the context of civil penalties *including the recapture of economic benefit* that "[t]he primary purpose of civil penalties is not punishment. Rather, these penalties serve a remedial purpose by making noncompliance at least as costly as compliance. They also reimburse the government for enforcement expenses and other costs generated by the violation." (quoting *Agency of Nat. Resources v. Riendeau*, 157 Vt. 615, 622 (1991)).

In sum, the recapture of "economic benefit" is not, under the statute, necessarily characterized as "damages" as opposed to a "cost, civil fine, penalty, or expense." The Town's argument that the 2008 amendment to 10 V.S.A. § 8010 says just that is not persuasive. Prior to the amendment, "the economic benefit gained from the violation" was one factor among many that ANR was required to consider when imposing a civil penalty. 10 V.S.A. § 8010(b)(5) (2007). The 2008 amendment separated out the recapture of economic benefit from the other

3

penalty factors, defined it, and set a specific limit on how much of it might be sought. Nothing in the statute or amendment implies any legislative intent to stop treating the recapture of economic benefit as a civil penalty and start treating it as "damages" that are not a civil penalty.

Even though the duty to defend is broader than the duty to indemnify, *Cincinnati Specialty Underwriters Ins. Co. v. Energy Wise Homes, Inc.*, 2015 VT 52, ¶ 33, 199 Vt. 104, in this case, there was no possibility of potential coverage that would trigger the duty to defend. The coverage question was not whether the ANR action sought "damages." It was whether the ANR enforcement action represented a claim based on a wrongful act as defined in the Fund. The exclusion question was whether the ANR action was an enforcement action by a governmental agency seeking a "cost, civil fine, penalty, or expense," which it was. Hence, the duty to defend was not triggered.

## ORDER

For the foregoing reasons: VLCT's and PACIF's motion for summary judgment is *granted* and the Town's motion is *denied*.

Dated at Montpelier, Vermont this 14th day of September 2017.

Mary Miles Teachout
Superior Judge