NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 112

No. 2014-160

| | |
|---|---|
| James LeBlanc, Christine LeBlanc Fortin, David LeBlanc and Herman LeBlanc | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Civil Division |
| Robert E. Snelgrove | |
| | April Term, 2015 |

A. Gregory Rainville, J.

Brice Simon of Breton & Simon, PLC, Stowe, for Plaintiffs-Appellants/Cross-Appellees.

Christopher D. Roy of Downs Rachlin Martin PLLC, Burlington, for Defendant-Appellee/
  Cross-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **ROBINSON, J.**  This case encompasses two main related sets of disputes.  One dispute arises from a landowner's replacement of his boathouse and construction of ancillary retaining walls that encroach onto his neighbors' property.  This dispute includes claims for declaratory and injunctive relief, as well as damages on account of the landowner's alleged trespass.  The neighbors challenge the trial court's conclusions that the landowner was entitled to build the encroaching structure by virtue of a deeded easement and that they cannot prevail in a claim for trespass on account of consent or estoppel.  Because we conclude that the court's construction of the deeded easement was erroneous, and the court improperly addressed the other issues in derogation of the neighbors' request for a jury trial, we reverse in connection with this dispute.

¶ 2.    The second dispute—which flows from and is intertwined with the first—involves acts of vandalism to the disputed boathouse by the occupant of the neighbors' property. The occupant appeals from the judgment against him, and the landowner cross-appeals, raising a host of issues in connection with that judgment. We affirm the judgment in connection with this second dispute.

¶ 3.    The following general description of the facts is not disputed, except where noted. Plaintiffs James LeBlanc, Christine LeBlanc Fortin, and David LeBlanc own a property on the western shore of Lake Memphremagog in the Town of Newport. They acquired title to the property as tenants in common in 1993 and 1994 from their father and mother, Herman and Lucienne LeBlanc.[1]  Throughout the events giving rise to this appeal, plaintiff Herman LeBlanc lived on the LeBlanc property. Defendant Robert Snelgrove owns the property immediately to the north of the LeBlanc property.

¶ 4.    This case arises from Snelgrove's replacement of a boathouse on his property. The "old boathouse" was located along the southerly boundary of Snelgrove's property, with its southerly wall bordering the LeBlanc property, and the lake to the east. The boundary between the properties wrapped to some extent along the western (inland) side of the old boathouse. Starting in the fall of 2006, Snelgrove took down the old boathouse and built the "new boathouse" approximately five feet to the north of the previous structure.[2]  The original

---

[1]  A fourth child of Herman and Lucienne LeBlanc, Jacques LeBlanc, also acquired title to the property as a tenant in common with his siblings at this time. He was a plaintiff below, but died while this case was pending, and the court dismissed claims by or against him.

[2]  This project was the subject of separate litigation. See In re Snelgrove Permit (Boathouse Replacement), No. 2009-162, 2010 WL 286742 (Vt. Jan. 15, 2010) (unpub. mem.), https://www.vermontjudiciary.org/UPEO2006-2010/eo09-162.pdf.    There, the LeBlancs challenged the zoning board of adjustment's after-the-fact issuance of an amended permit for the new, replacement boathouse, which had a bigger footprint and was taller than the original boathouse. Id. at *1. The environmental court held that the new boathouse as built was a non-conforming structure that was not under the applicable bylaws eligible for conditional use approval. Id. We affirmed. Id. at *4.

2

boathouse had straddled a stream that emptied into the lake. When he erected the new boathouse, Snelgrove built a concrete retaining wall at his southerly property boundary in approximately the same location as the former southerly foundation wall of the original boathouse, although the retaining wall was longer than the former boathouse wall. This new retaining wall to the south, along with the southerly foundation wall of the new boathouse to the north, formed a sluice that channeled the stream that formerly ran beneath the old boathouse to the south of the new boathouse. Snelgrove built two retaining walls extending beyond the westerly edge of the southerly wall of the new boathouse, a northern wall and a southern wall. Together, these retaining walls funneled the stream into the channel between the new boathouse and the new retaining wall. Whether the back of the new boathouse extends onto the LeBlanc property, and the extent to which the retaining walls encroach onto the LeBlanc property, were subjects of dispute. Relying heavily on the undisputed fact that the new boathouse was longer than the old boathouse in the east-west dimension, the LeBlancs took the position that the new boathouse itself encroached onto their property. Arguing that the new boathouse was built several feet closer to the lake to the east, accounting for the relatively greater east-west dimension of the new boathouse, Snelgrove argued that the new boathouse was built within the boundary separating the parties' properties. There was no dispute that portions of the new retaining walls extended onto the LeBlanc property, although the significance of that fact was very much in dispute.

¶ 5. In December 2008, while their challenge to Snelgrove's zoning permit was pending in the environmental court, the LeBlancs sued Snelgrove in connection with the project, alleging, among other things, that both the westerly side of the new boathouse and the walls of the channel constructed by Snelgrove encroached onto their property. They also alleged that in 2004 and 2005, in connection with construction on his own property, Snelgrove cut off a water pipe leading from a spring to the LeBlanc property, thereby terminating the LeBlancs' one-third

3

interest in certain spring and water rights. The LeBlancs also alleged that Snelgrove had altered the drainage on his property, causing unpermitted drainage to trespass onto their property. The LeBlancs sought a declaration of the boundary between the LeBlanc and Snelgrove properties; compensatory damages; injunctive relief, including removal of the encroaching structures and restoration of their land to its former condition; punitive damages; and attorney's fees. They requested a "trial by jury on all issues cognizable by a jury."

¶ 6.    Snelgrove counterclaimed. He alleged that the new boathouse in its entirety, and portions of the retaining walls identified in the LeBlancs' complaint, were on his property, and sought a declaratory judgment to quiet title and establish the boundary line between his property and the LeBlancs' property. Snelgrove also alleged various acts of vandalism against his property and trespass by Herman LeBlanc and sought damages and injunctive relief for trespass. With respect to the retaining walls that encroached onto the LeBlancs' property, Snelgrove alleged that they were necessary for lateral support to both the Snelgrove and LeBlanc properties. Snelgrove sought injunctive relief to protect the retaining walls by prohibiting the LeBlancs from taking any action to undermine or erode either party's property. Like the LeBlancs, Snelgrove included a jury demand in his complaint.

¶ 7.    In March 2013, after several years of discovery, mediation, and motion practice, the trial court ruled that Herman LeBlanc lacked standing to sue Snelgrove for trespass because LeBlanc had no ownership interest in the property. The court's order dismissing Herman LeBlanc as a plaintiff did not affect his status as a third-party defendant with respect to Snelgrove's counterclaims against him.

¶ 8.    After the September 2013 jury draw, the court initially denied James LeBlanc's motion to sever Snelgrove's third-party trespass claim against Herman LeBlanc. However, two days before the trial was scheduled to begin on October 9, upon reconsideration, the court granted the motion, separating for trial purposes those claims from the parties' respective

4

requests for a declaration setting forth the boundary between the two properties, the LeBlancs'[3] claims that the new boathouse and retaining walls unlawfully encroached onto their property, and Snelgrove's claims that the walls were necessary to provide lateral support to the respective properties.

¶ 9. At a pretrial conference the day before the jury trial was to begin, the court indicated that it was considering a bifurcated trial, whereby the jury would first address the claims concerning the boundary and alleged encroachments and then separately consider Snelgrove's trespass claims against Herman LeBlanc. As that discussion unfolded, the court suggested that it could have a bench trial on the issues that the court was required to decide and then "see what's left and see whether or not there's some ability to resolve the remaining issues without a trial. And if not, then we submit the remaining issues to a jury." Both parties expressly declined to waive a jury trial with respect to the entire matter.

¶ 10. Snelgrove's counsel endorsed the court's proposal with respect to the boundary issues, saying:

> [O]ne benefit of that approach is that the plaintiffs' damage claim relates to encroachment of retaining walls and the like on their property. It's undisputed that a portion of the retaining walls are located on the property—on their property. However, plaintiffs' claim is also that a portion of the boathouse and almost the entirety of the retaining wall is, in fact, encroaching.
>
> So to some extent the jury cannot assess damages claimed by a plaintiff until the court resolves the question of the extent of the encroachment. That is, is it just . . . the western end of the retaining wall upstream along the brook that's undisputed or is it the entire retaining wall, a portion of the boathouse, and a portion of the boathouse foundation, as plaintiffs claim? Because that obviously is going to impact the potential damages of plaintiff. So one possibility would be to hear the bench issues at court.

---

[3] In light of the court's ruling that Herman LeBlanc did not have standing to assert trespass claims in connection with the property, references to "the LeBlancs" encompass only the LeBlanc children. We identify Herman LeBlanc by his first and last name, or as Leblanc (singular).

5

¶ 11.    The LeBlancs' counsel did not object to the notion of the court trying the boundary issues as a bench trial, but argued that he could try the trespass issues without establishing the precise location of the boundary, given Snelgrove's concession that about thirty feet of the retaining wall was constructed on the LeBlanc property.[4]

¶ 12.    The court concluded, "[I]f I can't establish where the boundary line is, the jury can't even start to consider whether there's damages for encroachment." The court indicated that it would first try the boundary issues as a bench trial before having the parties present their other claims to the jury.

¶ 13.    Accordingly, on October 9, the first day of the bench trial, the LeBlancs called Snelgrove to testify and presented the testimony of a surveyor. The testimony on this first day related solely to the location of the boundary between the LeBlanc and Snelgrove properties and the location of the new boathouse, retaining walls, and associated structures relative to that boundary.

¶ 14.    The morning of the second day of trial, during cross-examination of the excavator who worked on the boathouse relocation, Snelgrove's counsel asked whether the excavator had been hired at some point to remove rocks that someone had placed in front of the boathouse. Because Herman LeBlanc's placement of rocks in front of the boathouse had been the subject of a separate suit for which judgment had been previously entered, the LeBlancs' counsel objected to the scope of the question. The court overruled the objection, concluding that the testimony was potentially relevant with respect to claims for injunctive relief. In addition, the court said, "[T]he pleadings also request that [the court] not only define the boundary lines of the parties, but also whether some of the defenses that have been asserted have merit." This was the first

---

[4]  The LeBlancs did object to the last-minute change to the structure of the trial without giving them time to prepare.

6

suggestion in the record that the court might be considering defenses to the trespass claims as part of the bench trial.

¶ 15.   Then, during Snelgrove's direct examination of the contractor who oversaw the concrete work on the boathouse relocation project, Snelgrove's counsel asked whether any members of the LeBlanc family were present during his work.  In connection with the LeBlancs trespass claims against Snelgrove, Snelgrove had raised the defenses of equitable estoppel and waiver.  The LeBlancs' counsel objected to the question, arguing that it went beyond the scope of the "boundary portion" of this trial.  He argued, "We're trying to first establish a boundary, and it would completely alter the types of testimony elicited—elicited from all witnesses—if we're going to be going beyond the scope of the boundary first."  The trial court overruled the objection and allowed Snelgrove's counsel to question the contractor about the presence of any LeBlancs during the project, conversations with Herman and Jacques LeBlanc relating to design decisions concerning the southerly retaining wall, and the importance of the wall in protecting both properties.  The concrete contractor testified that the LeBlancs did not object to the scope or nature of the work he was doing, and that he would not have done the work if they had objected.[5] The court overruled several objections by the LeBlancs' counsel through this examination.

¶ 16.   During cross-examination of James LeBlanc, Snelgrove's counsel asked whether James LeBlanc was present for any discussions between members of his family and the contractor concerning the design and construction of the southerly retaining wall.  The LeBlancs objected on the ground that the line of questioning was not relevant to the question of the location of the boundary.  Their counsel argued that

> the fact that there may have been discussions about extending the sluiceway or bringing equipment along the one property does not help the court establish where the boundary line is, so I would object to the relevancy.  And also we're getting into areas that are properly left for the jury if we're going to proceed with a jury trial.

[5]  References to "LeBlancs" in this testimony include Herman LeBlanc.

7

The court overruled the objection, and James LeBlanc testified that he had not objected at the time the new boathouse foundation wall and retaining walls were constructed. He also testified that there was no agreement concerning the construction of a sluiceway and that what was actually constructed was nothing like what he expected, was far too overbuilt, and went way beyond anything that had ever been discussed with him, his father, or his brother Jacques.

¶ 17. Finally, over the LeBlancs' objection that the testimony was not relevant to the boundary dispute, the court allowed Snelgrove to testify about an agreement to facilitate access over the LeBlancs' land for the purpose of rebuilding the boathouse.

¶ 18. In his proposed findings, Snelgrove argued that the retaining walls that encroached onto the LeBlanc property were necessary to replace the lateral support for the LeBlanc property that was previously provided by the old boathouse's southerly foundation wall, and thus fell within the authorization in a deeded easement in Snelgrove's chain of title "to use the land immediately adjoining [the old] boathouse to repair and maintain the same." Snelgrove also submitted findings and conclusions supporting a defense of equitable estoppel with the following caveat:

> The defendant submits the following proposed findings of fact relating to equitable estoppel only in case the plaintiffs do not pursue a damage remedy for trespass at the jury trial in this matter. If the plaintiffs do pursue a damage claim, then the defendant agrees to have the jury determine the affirmative defense of estoppel since the defense would apply to both the damage remedy and injunctive relief being pursued by the plaintiff.

¶ 19. In a status conference three days before the November 1 jury portion of the trial, the court orally issued its findings and conclusions from the bench trial, with the expectation that it would follow up with a written decision. The court described in detail its conclusion as to the location of the boundary line between the parties' properties, and concluded that the new boathouse and the northern retaining wall that funneled the stream into the sluice were fully on

8

Snelgrove's property.[6]  With respect to the retaining wall that did encroach onto the LeBlanc property, the court pointed to the easement in favor of the Snelgrove property "to use the land immediately adjoining [the old] boathouse to repair and maintain the same" ("the boathouse easement") and explained that the actions of the parties reflected the LeBlancs' consent to a modification and expansion of this easement to allow for construction of the retaining wall.  In particular, the court found that Herman LeBlanc was the agent of his children in connection with this transaction and in that capacity collaborated with Snelgrove and consented to the construction of the retaining wall as built.  In addition, the court concluded that the expanded retaining walls were necessary to support the parties' respective properties and avoid violation of state law, and were thus within the expanded easement.

¶ 20.  The LeBlancs filed a motion to reconsider, arguing that by making factual findings—that Herman LeBlanc was the LeBlancs' agent, and that he agreed to the sluiceway as built—the court had denied the LeBlancs their right to a jury trial.  The LeBlancs argued that the court had made it clear from the outset that the sole issue for the bench trial was the boundary line and nothing else, and noted that the court never suggested that questions such as agency or the existence of an agreement would be tried to the court.  The LeBlancs presented their case with that understanding and did not present evidence on those subjects.  The court ruled on these questions that were not before the court and for which the pertinent evidence had not been presented.  Moreover, the existence of an agency relationship, or the presence and scope of an agreement between the parties, were issues squarely for the jury to decide.

¶ 21.  The court denied the LeBlancs' motion, reasoning that the LeBlancs had sought injunctive relief in their complaint and that all of the issues before the court required application of the law, and were thus mixed questions of fact and law properly decided by the court.  The

_____

[6]  Snelgrove had previously conceded that a portion of this retaining wall encroached on the LeBlanc property, but the court concluded that this stipulation was inconsistent with the court's assessment of the evidence.

9

next day, the court expanded on its findings on the record, adding a finding that the only damages sustained by the LeBlancs as a result of Snelgrove's construction of the wall on their property was the reasonable cost to construct a fence or barrier to reduce the risk created by the new retaining wall on account of the three-to-four-foot drop-off from top to bottom.

¶ 22. The court proceeded with the October 31 jury trial, which at that point was limited to Snelgrove's claims against Herman LeBlanc for trespass and related claims. The most significant of the trespass claims was that Herman LeBlanc had used a chain saw to carve into the walls and roof of Snelgrove's newly built boathouse along what Herman LeBlanc asserted was the boundary line between the parties' properties. The court declined to submit to the jury a vicarious claim for damages against Herman LeBlanc's adult children on the theory that he committed his trespass and caused the associated damages while acting as their agent. The court also declined to allow Snelgrove to call Herman LeBlanc as a witness because LeBlanc was then facing criminal charges in connection with the main act of vandalism at issue in this civil case. The court declined to allow Snelgrove to question Herman LeBlanc about any relevant potentially criminal acts of vandalism with respect to the boathouse and instructed the jury not to draw an inference from Herman LeBlanc's failure to testify. The jury concluded that Herman LeBlanc trespassed on Snelgrove's property without privilege to do so and awarded compensatory damages of $12,600 and punitive damages of $25,000.

¶ 23. While the jury was deliberating, the court held a bench trial on the remaining issues of the spring rights, which the LeBlancs had pleaded in their complaint, and the allegedly trespassory drainage onto the LeBlancs' property. With respect to the latter claim, the parties were limited in their ability to fully address the issue by the fact that the court's boundary determination called for a survey, within the constraints of the court's instructions, to identify the exact boundary on the ground. Whether the offending drainage trespassed onto the LeBlancs property would depend in part on where exactly the surveyors placed the boundary line in the

10

yet-to-be-conducted survey. Accordingly, the court granted the LeBlancs' request to reserve taking further evidence on this issue until after the survey and more precise ruling as to the boundary line. Snelgrove did not object to this ruling. The court never issued any rulings concerning either of these issues and did not take more evidence after its final written order attaching the final survey depicting the boundary between the properties.

¶ 24. The LeBlancs filed a timely motion for a new trial under Vermont Rule of Civil Procedure 59, renewing their argument that the court's decision from the bench trial exceeded its permissible scope and deprived them of a jury trial. Snelgrove filed a petition for fees, a "Motion to Alter and Clarify" seeking a written order as to the court's boundary determination, and proposed findings and conclusions with respect to the spring issue. In January 2014, the LeBlancs filed a supplemental motion to reconsider the denial of trial by jury. In March 2014, the trial court issued an entry order denying the LeBlancs' motions, denying Snelgrove's petition for fees, granting Snelgrove's request for costs, and granting Snelgrove's motion for clarification and instructing him to submit a proposed order. The court did not address the issues concerning spring rights and the drainage from the Snelgrove property. The LeBlancs and Herman LeBlanc appealed.[7] Snelgrove filed a provisional cross-appeal, pending a final judgment order from the court. He appealed the court's orders with respect to fees and costs, as well as the court's rulings declining to allow him to call Herman LeBlanc as a witness or to draw adverse inferences from his failure to testify.

¶ 25. In August 2014, the court signed an order of findings of fact, conclusions of law, and a final judgment as submitted by Snelgrove. In addition to clarifying the specifics of the court's boundary determination, the order contained numerous findings concerning interactions between members of the LeBlanc family and contractors who worked on the new boathouse

---

[7] Insofar as the LeBlancs and Herman LeBlanc filed the appeal before the trial court actually issued its final order, we ruled that the appeal would be treated as timely filed after the court's filing of a final order. See V.R.A.P. 4(a)(3).

project, as well as specific conclusions relating to the encroachments. The order laid out several rationales supporting the conclusion that the retaining wall constructed by Snelgrove on the LeBlanc property did not constitute a trespass. First, the court concluded that Herman LeBlanc, acting as an agent for the LeBlancs, consented to the construction of the retaining walls. Next, the court concluded that equitable estoppel prevents the LeBlancs from now complaining about the design and location of the retaining walls or from arguing that the boathouse easement did not encompass the right to extend the boathouse and its associated retaining walls when necessary to repair or replace the boathouse. Finally, the court concluded that the boathouse easement's broad wording encompasses all retaining walls and associated structures reasonably necessary to repair or replace the boathouse. The court's order did not address the LeBlancs' claim that Snelgrove cut off their spring rights.

¶ 26.    We note at the outset that the LeBlancs do <u>not</u> challenge the court's order setting the boundary between the parties' properties. Nor do they challenge the court's decision to conduct a bench trial with respect to the location of the boundary relative to the new boathouse and retaining walls. Because the parties tried the boundary dispute to the court by agreement, we need not address the court's assumption that the location of the boundary between the parties' properties in the context of this case that included claims for damages for trespass was a question for the judge and not the jury. Cf. <u>Lippett v. Kelley</u>, 46 Vt. 516, 523 (1874) (construction of deeds is question of law for judge, but question of whether particular premises are included in deed description is for jury because "[s]uch an issue cannot be determined by an inspection of the deeds, and hence it must be treated and tried like any other disputed question of fact"); see also <u>Finley v. Sutton</u>, 267 S.E.2d 252, 252 (Ga. 1980) ("Since there was a factual dispute regarding which survey was correct, the trial judge did not err in submitting the question to the jury."); <u>Bartlett v. Pullen</u>, 586 A.2d 1263, 1266 (Me. 1991) ("Construction of a deed to determine what are the boundaries is a ruling on a question of law to be made by the court, while

12

the determination of where the boundaries are on the face of the earth is a finding of fact to be made by the factfinder, here the jury." (citing Conary v. Perkins, 464 A.2d 972, 975 (Me. 1983))); Hansen v. Stewart, 761 P.2d 14, 15-16 (Utah 1988) ("There is a right to a jury trial on all questions of fact in any action to determine the right to possession of real property. . . . The determination of the actual location of a disputed boundary is often a compound issue which presents questions both of law and fact. . . . The appropriate roles of judge and jury are preserved when the judge instructs as to the relative weight to be given each type of evidence and the jury then determines the facts to which those relative weights are to be assigned." (citations omitted)).

¶ 27.    Rather, the LeBlancs make three arguments on appeal.  First, they take issue with the trial court's conclusion that the boathouse easement was sufficiently broad on its own terms to encompass the construction of permanent concrete structures on the LeBlancs' property. Second, they argue that the trial court's approach deprived them of the right to a jury trial in connection with their claims for unlawful mischief, ejectment, trespass, and conversion, in which they sought legal damages as well as injunctive relief.  Third, they argue that Snelgrove had unclean hands and thus could not invoke the doctrine of equitable estoppel.  In addition, Herman LeBlanc argues that in connection with the trespass claims against him personally, he could not be bound by the trial court's boundary determination from the bench trial to which he was not a party.

¶ 28.    In his cross-appeal, Snelgrove challenges the trial court's denial of his fee petition, raises two issues to be addressed only in the event of a remand and retrial of his claims against Herman LeBlanc, notes that the trial court never issued an order awarding him costs, and requests a remand for an order concerning the spring-rights issue that conforms to the proposed findings and conclusions he filed.

13

## I.

¶ 29. We first address the LeBlancs' challenge to the trial court's legal conclusion that Snelgrove was entitled to construct a retaining wall on the LeBlancs' property on the basis of the boathouse easement. The language of the 1963 deed reserved "a parcel of land upon which the boat house now sits [sic] and the right to use the surrounding land to repair the same" for the benefit of the boathouse owner. The trial court reasoned that this easement in favor of Snelgrove was broad enough to encompass "all retaining walls and associated structures reasonably necessary to repair or replace the boathouse."

¶ 30. The proper construction of a deed is a question of law, which we review de novo. Tibbetts v. Michaelides, 2011 VT 52, ¶ 6, 190 Vt. 520, 24 A.3d 581 (mem.). The "master rule" of deed construction is that the intent of the parties governs. Kipps v. Chips, 169 Vt. 102, 105, 732 A.2d 127, 129 (1999). "In ascertaining intent, we must consider the deed as whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible." DeGraff v. Burnett, 2007 VT 95, ¶ 20, 182 Vt. 314, 939 A.2d 472 (quotation omitted). If a deed term is unambiguous, "the plain meaning of the language controls without resort to rules of construction or extrinsic evidence." Main Street Landing, LLC v. Lake Street Ass'n, 2006 VT 13, ¶ 7, 179 Vt. 583, 892 A.2d 931 (mem.); see also Brault v. Welch, 2014 VT 44, ¶ 13, 196 Vt. 456, 97 A.3d 914 ("In interpreting deeds, the court must start with the language of the deed itself, and ambiguity does not result simply because the plain language leads to an unfavorable or implausible outcome.").

¶ 31. "A deed term is ambiguous if reasonable people could differ as to its interpretation." DeGraff, 2007 VT 95, ¶ 20 (quotation omitted). In determining whether a deed is ambiguous, the court may examine "limited extrinsic evidence of 'circumstances surrounding the making of the agreement.' " Kipps, 169 Vt. at 107, 732 A.2d at 131 (quoting Isbrandsten v. N. Branch Corp., 150 Vt. 575, 579, 556 A.2d 81, 84 (1988)).

14

¶ 32.    In this case, we do not find the deed language in question to be ambiguous on its face, and Snelgrove has not offered any extrinsic evidence of the circumstances surrounding the making of the agreement that might suggest an ambiguity that is not apparent on the deed's face. The easement grants Snelgrove a limited right to enter onto the section of the LeBlanc property adjoining the boathouse for the purpose of maintaining or making repairs to the structure. Standing on a dropcloth on the LeBlanc property while repainting the boathouse, placing the base of a ladder on the LeBlanc property while repairing rotting wood on the boathouse wall, or even situating heavy equipment on the LeBlanc property for the purpose of demolishing and rebuilding the failing wooden structure atop the existing boathouse foundation are all examples of activities falling within the scope of the easement.   But building a permanent concrete structure several feet high, extending twenty-five feet onto the LeBlanc property,[8] thereby permanently appropriating the use of that property and substantially expanding the geographic scope of the purported easement—and doing all of this for the purpose of providing support necessitated by the relocation of the boathouse from its location at the time the easement was conveyed to a new location several feet removed from that spot—goes far beyond the type of access described by the deeded easement.  To the extent that the trial court rested its conclusion that the encroaching retaining wall did not amount to trespass on its legal analysis of the boathouse easement on its face, its conclusion cannot stand.

## II.

¶ 33.    A second rationale offered by the trial court to support its conclusion that the encroaching retaining wall did not constitute a trespass is that the LeBlancs, acting through their agent Herman LeBlanc, consented to the construction of the retaining walls at issue here.  The

---

[8]  The trial court found that the encroaching concrete wall was three to four feet above the ground from the top of the canal to the floor of the canal and was right next to the LeBlanc cottage.  It concluded that the drop-off from the newly constructed cement wall created a risk that could and should be remedied by constructing a fence or additional wall several feet higher to keep people from accessing the top of the wall.

LeBlancs challenge the court's authority to reach this issue, arguing that they had a right to a jury trial on their claims regarding trespass, unlawful mischief, ejectment, conversion, and any affirmative defenses brought by Snelgrove. The LeBlancs argue that the court erred when it decided these issues in a bench trial since both parties demanded a jury trial on all issues triable by a jury, neither party stipulated to a bench trial on these issues, and the court did not make a finding in advance of the trial that the LeBlancs were not entitled to have a jury decide their claims and defenses.

¶ 34. The court rejected the LeBlancs' arguments below, explaining that the boundary-line determination and encroachment-related claims were equitable in nature, or involved application of the law, and therefore did not require a trial by jury.

¶ 35. We review without deference the trial court's legal determination that the LeBlancs were not entitled to a jury trial on the issues of whether Herman LeBlanc was an agent of the LeBlancs in connection with these transactions, and whether he consented to the construction of the retaining walls on the LeBlanc property. State v. Green Mountain Future, 2013 VT 87, ¶ 15, 194 Vt. 625, 86 A.3d 981 ("We review the trial court's conclusions of law, particularly its constitutional decisions, de novo."); see also Urs v. Maricopa Cnty. Attorney's Office, 31 P.3d 845, 846 (Ariz. Ct. App. 2001) (holding that entitlement to jury trial "is a question of law, and we therefore review the superior court's order de novo").

¶ 36. The Vermont Constitution describes the right to trial by jury as "sacred." Vt. Const. ch. I, art. 12. It provides: "Trials of issues, proper for the cognizance of a Jury as established by law or by judicial rules adopted by the Supreme Court not inconsistent with law . . . shall be by Jury, except where parties otherwise agree." Vt. Const. ch. II, art. 38. Vermont Rule of Civil Procedure 38(a) accordingly provides, "The right of trial by jury as declared by the Constitution of the State of Vermont or as given by a statute shall be preserved to the parties inviolate." The reporter's notes to that rule explain that this right applies to "the right

to trial by jury as it was known at common law at the time of the adoption of the Constitution, except as it may have been extended by statute." Reporter's Notes, V.R.C.P. 38(a).

¶ 37.     This Court has held that "entitlement to a jury trial is dependent upon the relief requested. If the relief requested is equitable, no right to a jury trial exists." Merchants Banks v. Thibodeau, 143 Vt. 132, 134, 465 A.2d 258, 260 (1983) (footnote omitted). On the other hand, if the relief requested is legal, then the right to a jury trial attaches. The right to trial by jury attaches to claims traditionally tried in a court of law. State v. Irving Oil Corp., 2008 VT 42, ¶ 5, 183 Vt. 386, 955 A.2d 1098.

¶ 38.     In this case, the LeBlancs have made a claim for damages against Snelgrove based on causes of action for ejectment, unlawful mischief, and trespass.[9] Actions for recovery of possession of real property and for damage to property were historically actions at law. Ross v. Bernhard, 396 U.S. 531, 533 (1970) ("The Seventh Amendment . . . entitled the parties to a jury trial in actions for damages to a person or property . . . [and] for recovery of land . . . ."); 47 Am. Jur. 2d Jury § 57 (2006) ("At common law, various forms of action for recovery of the possession of real property were actions at law in which a trial by jury was afforded," including "suits for ejectment, . . . actions to recover land, and . . . actions for trespass to land." (footnotes omitted)); see also D'Orazio v. Pashby, 102 Vt. 480, 486-87, 150 A. 70, 73 (1930) (holding that establishment of boundary line by acquiescence is question of fact for jury). Accordingly, the LeBlancs were entitled to trial by jury on these legal claims.

¶ 39.     The trial court opted to decide some of the factual questions essential to resolving these legal claims because the parties had also sought equitable relief—declaratory and

---

[9]     The LeBlancs also alleged that Snelgrove was engaged in a "continuing conversion." The tort of conversion involves wrongful exercise of dominion over the chattels of another. Restatement (Second) of Torts § 222A (1965). It is unclear from the evidence what chattels, if any, were wrongfully converted by Snelgrove. To the extent that the LeBlancs have a claim for conversion, the claim for damages from conversion is also subject to trial by jury, but the existence of such a claim on the basis of the evidence in the record is not clear.

injunctive—in their respective claims and counterclaims.  See <u>Irving Oil</u>, 2008 VT 42, ¶ 11 (noting that "claim for declaratory and injunctive relief . . . is equitable in nature").  The Vermont Rules of Civil Procedure specifically address the circumstance in which a legal claim and an equitable claim are joined:

> Whenever a claim for legal relief is joined with a claim for equitable relief in the same complaint or by counterclaim, cross-claim or third-party complaint, there shall be a right to trial by jury on the claim for legal relief triable by right by jury if demanded in accordance with these rules. In the furtherance of convenience or to avoid prejudice, the court may order a joint trial of all legal and equitable claims, with separate fact-finding by the jury and by the court or, alternatively, may order separate trials for the legal and equitable claims.

V.R.C.P. 39(d).  The Reporter's Notes explain:

> While the basic holding of <u>Beacon Theatres</u>[, Inc. v. Westover, 359 U.S. 500 (1959)] is that the legal claim must be tried first to preserve the right to trial by jury on common factual issues, it is not always necessary, and is often unwise, to have two separate trials. . . . "[The matters] may be tried simultaneously, with the jury rendering a verdict on the jury issues and the court making findings on the nonjury issues . . . so long as the order of trial is so arranged that it preserves the right of trial by jury on the jury issues."

Reporter's Notes—1985 Amendment, V.R.C.P. 39(d) (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure § 2337, at 130 (1971)).  In other words, where a case involves both legal and equitable claims, the jury verdict must come first, after which the court may issue findings on the equitable claims that must be consistent with the jury verdict.  <u>Retrovest Assocs., Inc. v. Bryant</u>, 153 Vt. 493, 495 n.1, 573 A.2d 281, 282 n.1 (1990).

¶ 40.  The trial court's approach flipped this process.  It should have first allowed the jury to decide the factual questions that underlay both the legal and equitable claims—such as the questions of whether Herman LeBlanc was an agent for the LeBlancs and whether he consented to construction of the encroaching retaining wall on the LeBlanc property.  In addressing the parties' equitable claims for relief, the court should have then ensured that its own

findings were consistent with the jury's. The court may have been correct that the facts that it found were predicate to the claims for equitable relief that were ultimately the court's to adjudicate, but it erred in failing to recognize that those same facts were integral to the claims for legal relief with respect to which the LeBlancs were clearly entitled to trial by jury, as they had requested.

¶ 41. Snelgrove suggests on appeal that the LeBlancs agreed to waive their right to trial by jury on the question of whether Herman LeBlanc, as agent for the LeBlancs, consented to construction of the retaining wall on his property. That suggestion is not supported by the record. At the time that the court decided, with the agreement of the parties, to hold a bench trial before conducting the jury trial, it indicated that the bench trial was only for the purpose of determining the boundary between the parties' properties. On the second day of that trial, when Snelgrove offered evidence that went beyond that purpose, the court implied that the evidence was being admitted for a limited purpose. It was only when the court recited its findings and conclusions on the record, more than two weeks after the bench trial, that the LeBlancs first learned that the court considered the bench trial to cover a wide range of issues beyond the location of the boundary on the ground. In contrast to the court's decision to establish the boundary by a bench trial, we cannot conclude that the LeBlancs in any way stipulated or acquiesced to the court's trial of other issues apart from the location of the boundary. To the contrary, in their initial complaint, following a status conference several months before the jury trial, and immediately before the jury trial in response to the court's suggestion that the parties submit the entire case for a bench trial, the LeBlancs made it clear that, with the exception of the location of the boundary, they intended to assert their right to a jury trial on all issues subject to trial by jury.

¶ 42. To the extent that Snelgrove suggests that the trial court's determination of the agency and consent issues represented the court's implementation of the "bifurcation" sought by

the LeBlancs, Snelgrove is mixing apples and oranges. The LeBlancs sought to sever Snelgrove's claims against Herman LeBlanc from their trespass claim against Snelgrove and the claim and counterclaim for determination of the boundary. The LeBlancs' request in the motion to sever was to try one set of jury issues separate from the other. Nothing about the motion suggested a waiver of the right to try any claims before a jury. To the contrary, the motion presumed that all claims would be tried to a jury. What the court actually did—without the LeBlancs' agreement and without prior notice—was try to the court all issues related to the LeBlancs' trespass claims, including not only the boundary location but also whether Snelgrove encroached onto the LeBlanc property without authorization. The court's decision to decide these questions without a jury trial had nothing to do with the motion to sever requested by the LeBlancs.

¶ 43. Accordingly, the court was not authorized to determine in the first instance that the retaining wall constructed by Snelgrove on the LeBlancs' land did not constitute a trespass by virtue of any agreement of the parties.

III.

¶ 44. The court's third rationale in support of its conclusion that the retaining wall did not constitute a trespass was that equitable estoppel prevented the LeBlancs from now challenging Snelgrove's construction of the retaining wall on their land. "Equitable estoppel operates to prevent a party from asserting rights which may have existed against another party who in good faith has changed his or her position in reliance upon earlier representations." Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 222, 790 A.2d 408, 425 (2001) (quotation omitted). "The party asserting estoppel has the burden to demonstrate that . . . : (1) the party against whom estoppel is claimed knows the facts; (2) that party intends that his or her conduct will be acted upon or that the conduct is such that the party asserting estoppel has a right to think it should be acted upon; (3) the party seeking estoppel is ignorant of the true facts; and (4) that

20

party detrimentally relied upon the other party's conduct." Id. The rationale underlying the court's application of equitable estoppel (as opposed to the outright "consent" defense) in this case seems to be that: (1) Herman LeBlanc was an agent of the LeBlancs; (2) Herman LeBlanc and other LeBlancs knew that Snelgrove was constructing retaining walls of the resulting size and dimension on the LeBlanc property; (3) the LeBlancs remained silent about their objections, and Snelgrove had a right to rely on their silence; (4) Snelgrove was ignorant of the LeBlancs' objections; and (5) Snelgrove detrimentally relied on the LeBlancs' silence.

¶ 45. On appeal, the LeBlancs argue that Snelgrove could not rely on the defense of equitable estoppel on account of, among other things, his own unclean hands in connection with the construction of a boathouse that did not conform to the specifications presented to and approved by the zoning board of adjustment.

¶ 46. We do not necessarily need to reach this substantive argument, because the threshold question before us is a procedural one: Were the facts underlying Snelgrove's equitable-estoppel defense within the court's purview to address in the first instance? We conclude that they were not. The LeBlancs' right to a jury trial includes a right to trial by jury on the factual issues underlying Snelgrove's defense of equitable estoppel. See, e.g., Mellin, 173 Vt. at 222-23, 790 A.2d at 425-46 (jury entitled to decide facts underlying equitable-estoppel defense); see also Jamison, Money, Farmer & Co., P.C. v. Standeffer, 678 So. 2d 1061, 1067 (Ala. 1996) (holding that because evidence concerning defense of equitable estoppel was in dispute, issue was properly presented to jury); Ala. Power Co. v. Gielle, 373 So. 2d 851, 853 (Ala. Civ. App. 1979) (holding that question of whether plaintiffs' predecessor had knowledge of utility pole located on subject property was question for jury in resolving defense of equitable estoppel in action for trespass and ejectment); Hunstein v. Fiksman, 615 S.E.2d 526, 528 (Ga. 2005) ("Estoppel is usually an issue of fact to be decided by the jury." (quotation omitted)); Creech v. Melnick, 495 S.E.2d 907, 913 (N.C. 1998) ("[W]here the evidence raises a permissible

inference that the elements of equitable estoppel are present, but where other inferences may be drawn from contrary evidence, estoppel is a question of fact for the jury, upon proper instructions from the trial court."). As in any case, the court must make the threshold determination of whether the evidence could support the application of equitable estoppel. See, e.g., Boston & Me. R.R. v. Howard Hardware Co., 123 Vt. 203, 211-12, 186 A.2d 184, 191 (1962) (trial court erred in submitting equitable estoppel issue to jury because on record of case, estoppel by consent based on silence or acquiescence was not available); see also L&H Transp., Inc., v. Drew Agency, Inc., 403 N.W.2d 223, 227 (Minn. 1987) ("While estoppel is ordinarily a question of fact for the jury, when only one inference can be drawn from the facts, the question is one of law." (citations omitted)).

¶ 47. Accordingly, we cannot uphold the trial court's determination that there was no trespass to the extent that it rests on the court's application of the principles of equitable estoppel. This being the last of the alternative grounds to support the court's determination with respect to the trespass, we reverse the court's determination that no trespass occurred. Although the trial court's unchallenged boundary determination stands, on remand the court must retry the ejectment, trespass, and unlawful-mischief claims and associated defenses to a jury, conforming its ruling on the request for injunctive relief to the jury's verdict.

IV.

¶ 48. For his part, Herman LeBlanc argues that the trespass claim against him depends on an understanding of the boundary between the LeBlanc and Snelgrove properties. Insofar as he was not a party to the bench trial between the LeBlancs and Snelgrove concerning the location of the boundary, he cannot, he argues, be bound by the trial court's determination in that trial of the location of the boundary. He appeals the trespass judgment on that basis.

¶ 49. At the pretrial conference the day before the jury trial was initially scheduled to begin, Herman LeBlanc endorsed the LeBlancs' previously filed motion to sever. Herman

22

LeBlanc argued that the issue of the boathouse's location, and whether it constitutes a trespass, is a "clean" issue that should be separated from the "muddy issues" concerning the mischief allegedly perpetrated by him. Herman LeBlanc specifically requested that the issues be separated. When the trial court laid out its proposed plan to try the question of the location of the boundary to the court, and then subsequently try the claims against Herman LeBlanc to a jury using the boundary established by the court, he did not object.

¶ 50. During the morning of the jury portion of the trial, LeBlanc did not object when the court explained that the case—which at that point was limited to Snelgrove's trespass and related claims against Herman LeBlanc—would be tried on the basis of the boundary just determined by the court. LeBlanc again did not object when the trial court explained to the jury at the outset of the trial that the court would tell the jury where the boundary line was. Nor did he object following the court's instruction to the jury that the entire boathouse was on Snelgrove's property.

¶ 51. Because Herman LeBlanc's argument that the trial court erred in trying the boundary issue separately and applying its conclusions concerning the boundary to the trespass claims against him was raised for the first time on appeal, we do not consider it. See <u>Duke v. Duke</u>, 140 Vt. 543, 545, 442 A.2d 460, 462 (1982) ("[W]e do not ordinarily consider issues raised for the first time on appeal."). We accordingly affirm the trial court's judgment for Snelgrove on his claims against Herman LeBlanc.

V.

¶ 52. In his cross-appeal, Snelgrove challenges the trial court's decision not to award him attorney's fees in connection with his unlawful-mischief claim against LeBlanc pursuant to 13 V.S.A. § 3701(f). Following the jury trial, and the verdict in his favor, Snelgrove submitted a petition for attorney's fees. Herman LeBlanc objected, arguing that Snelgrove's counterclaim was for trespass, not unlawful mischief, and fees were not available in a trespass claim. He also

argued that the jury already considered Snelgrove's attorney's fees in awarding him damages in the trespass action. The trial court agreed, concluding in an entry order that the § 3701(f) issue "was neither pled nor considered by the jury" and that the jury had before it evidence of the amount and extent of attorney's fees when it determined the punitive damages.

¶ 53. On appeal, Snelgrove argues that the trial court was wrong—he did expressly plead unlawful mischief pursuant to 13 V.S.A. § 3701(f), and the jury made each of the predicate findings to a finding of unlawful mischief. Herman LeBlanc argues that an award of fees under § 3701(f) is discretionary and that the trial court's denial of fees is thus affirmable as within its discretion.

¶ 54. "A person who, with intent to damage property, and having no right to do so or any reasonable ground to believe that he or she has such a right, does any damage to any property," commits the crime of unlawful mischief. 13 V.S.A. § 3701. The criminal statute provides gradations of criminal penalties depending upon the value of the property in question. The statute also includes a civil remedy: "A person who suffers damages as a result of a violation of this section may recover those damages together with reasonable attorney's fees in a civil action under this section." Id. § 3701(f).

¶ 55. Had the trial court exercised its discretion under the statute to deny fees, we would review its denial for an abuse of discretion. See Post & Beam Equity Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n, 2015 VT 60, ¶¶ 47, 50, ___ Vt. ___, ___ A.3d ___. But the court's expressed bases for denying fees were its belief that Snelgrove had not pleaded and the jury had not considered the unlawful-mischief claim and that the jury had considered the fees when determining punitive damages. If these rationales are clearly erroneous on the record, we cannot affirm the court's exercise of discretion. See Cody v. Cody, 2005 VT 116, ¶¶ 16, 22, 179 Vt. 90, 889 A.2d 733 (finding abuse of discretion where court "ignored" parts of record and "drew unwarranted inferences" from other parts of record).

24

¶ 56. The suggestion that Snelgrove did not include a claim for attorneys' fees pursuant to § 3701(f) in his counterclaim is inaccurate. His counterclaim specifically seeks "damages and attorneys' fees pursuant to 13 V.S.A. § 3701(f)." Whether the unlawful-mischief claim was presented to the jury is a different matter. The court's jury instructions clearly identified Snelgrove's trespass claim and instructed the jury in connection with that claim. The court's jury instructions did not, however, identify a separate "unlawful mischief" claim and convey to the jury the elements of such a claim. Snelgrove did not object to this aspect of the court's jury instructions.

¶ 57. Nevertheless, Snelgrove argues that: (1) the jury was specifically asked to make a finding as to whether Herman LeBlanc had a fair and reasonable belief that he was authorized to enter upon the Snelgrove property; (2) this determination was unrelated to the trespass claim but is an element of the unlawful-mischief claim; and (3) it was determined without objection during the unrecorded jury-charge conference that the jury would decide that factual predicate to fee recovery pursuant to 13 V.S.A § 3701(f). The argument is that even though the trial court did not expressly instruct the jury with respect to the unlawful-mischief claim, every element of that claim is reflected in the jury's special verdict form such that the claim, while not specifically named, was effectively presented to and considered by the jury.

¶ 58. A person is liable for unlawful mischief if he or she: (1) intends to damage property; (2) has no right to do so; (3) has no reasonable ground to believe that he or she has such a right; and (4) does any damage to property. 13 V.S.A. § 3701. The court instructed the jury that Snelgrove sought damages for the costs of repairing his boathouse, and the jury's award of compensatory damages to Snelgrove is tantamount to a finding that LeBlanc did damage Snelgrove's property, so the special verdict form clearly encompasses the requirement of actual damage. The jury was not, however, specifically instructed or asked about the other three elements. The jury was asked whether LeBlanc committed a trespass, and the court instructed

25

that liability for trespass arises "when one intentionally enters or causes a thing to enter the land of another without privilege to do so." The jury was asked whether LeBlanc intentionally entered Snelgrove's land—not whether he intended to damage Snelgrove's property. Likewise, the jury was asked whether LeBlanc was privileged to enter onto Snelgrove's property and whether he had a fair and reasonable belief that he had a privilege, claim, or right to enter Snelgrove's property. It was not asked whether he had a privilege to damage the property or a reasonable ground to believe that he had the right to damage the property.

¶ 59. Accordingly, in the absence of any jury instruction addressing the unlawful-mischief statute, we cannot conclude that the special verdict form is itself sufficient to establish that the civil unlawful-mischief claim was presented to and considered by the jury.[10] We affirm the trial court's denial of Snelgrove's petition for fees.

VI.

¶ 60. Snelgrove raises two issues in his cross-appeal that he asks us to consider only if we otherwise order a retrial. In particular, Snelgrove argues that the trial court erred in declining to allow him to call Herman LeBlanc to the witness stand in connection with his claims against LeBlanc, even for the purpose of questioning him about matters other than the act of vandalism for which he was then facing criminal charges, and in instructing the jury not to draw an adverse inference from LeBlanc's invocation of the Fifth Amendment. He also challenges the trial court's award of judgment as a matter of law to the LeBlancs in connection with Snelgrove's claims for damages caused by Herman LeBlanc, who he alleges was acting as the LeBlancs' agent at the time he committed the acts of vandalism.

_____

[10] We note that the court's alternate rationale for denying the request for attorney's fees—that the amount of Snelgrove's attorney's fees was considered by the jury in awarding punitive damages—is not supported by the record. During its deliberations, the jury specifically asked the court whether attorney's fees "come under compensatory damages or punitive damages." The court noted that Snelgrove had argued that the jury could use his attorney's fees as a benchmark in assessing punitive damages, but specifically instructed the jury that if attorney's fees were to be awarded, they would be awarded by the judge.

26

¶ 61.    Snelgrove does not ask us to reverse the jury's verdict or award of damages to him on the basis of either of these arguments.  Rather, he asks us to address these issues only if we otherwise remand his claims against Herman LeBlanc for retrial.  Because we have found no independent basis for reversing the jury's verdict and award of damages, or for remanding Snelgrove's claims against LeBlanc for retrial, we do not address these issues raised in Snelgrove's cross-appeal.

## VII.

¶ 62.    In his cross-appeal, Snelgrove points out that the trial court ruled that he was entitled to recover costs allowed pursuant to Vermont Rule of Civil Procedure 54, which provides that "[c]osts other than attorneys' fees shall be allowed as of course to the prevailing party, as provided by statute and by these rules, unless the court otherwise specifically directs." V.R.C.P. 54(d)(1).  However, no order was ever issued in response to his bill of costs.  On remand, the court shall address taxable costs in connection with Snelgrove's claim against Herman LeBlanc pursuant to Rule 54.

## VIII.

¶ 63.    Finally, in his cross-appeal, Snelgrove seeks an order addressing the LeBlancs' claim that Snelgrove had improperly terminated the LeBlancs' spring rights by severing a pipe. This claim was raised in the LeBlancs' complaint and tried to the court, but never ruled upon. Snelgrove specifically requests that the trial court be instructed to adopt the proposed findings and conclusions submitted by Snelgrove following the trial on this issue.  The LeBlancs argue that there is no authority that the court must adopt one party's proposed findings if the opposing party does not file proposed findings.  The LeBlancs also suggest that because Snelgrove's counterclaim did not ask for relief on spring rights, the issue was never properly before the court below.

¶ 64.    The LeBlancs' suggestion that the spring-rights issue was not properly before the court below is puzzling.  They raised the issue in their own complaint, and the parties tried the issue to the court without objection.[11]  But they are correct that there is no authority for the suggestion that the trial court is bound to adopt Snelgrove's proposed findings and conclusions.  On remand, unless the LeBlancs choose to dismiss their claim concerning the spring rights with prejudice, the trial court shall rule on this issue.[12]

¶ 65.    In sum, (1) the trial court's declaration of the boundary between the parties' properties is unappealed and stands; (2) the trial court's rulings on the LeBlancs' claims for trespass, ejectment, and unlawful mischief are reversed, and those matters are remanded for a new trial consistent with this opinion; (3) the judgment for Snelgrove against Herman LeBlanc is affirmed; and (4) the trial court's denial of Snelgrove's fee petition is affirmed.  On remand, the trial court shall address the outstanding bill of costs and the remaining claims that were pled in the LeBlancs' complaint and tried to the court but never decided.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

---

[11]   Because the parties tried the spring-rights issue to the court by agreement, and no party raises the issue on appeal, we need not address whether the LeBlancs were entitled to a jury trial on their spring-rights claim.

[12]   No party raises on appeal the pleaded, partially-tried, and undecided issue concerning Snelgrove's alteration of drainage on his property, allegedly causing drainage to trespass onto the LeBlancs' property.  By agreement, the court took evidence on this issue while the jury was deliberating in connection with Snelgrove's claims against Herman LeBlanc, but also indicated that it would reserve judgment and would give the parties time to present additional evidence once the boundary line determination was finalized.  On remand, unless the LeBlancs choose to dismiss this claim with prejudice, the trial court should provide the parties an opportunity to present additional evidence and finally resolve this claim.