VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-088

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SEPTEMBER TERM,   2025

| | |
|---|---|
| Cris O'Donnell & Cheryl O'Donnell v. Hope Clough\* & Michelle Clough\* | } APPEALED FROM: <br> } <br> } Superior Court, Orange Unit, <br> } Civil Division <br> } CASE NO. 21-CV-00261 <br> Trial Judge: Daniel P. Richardson |

In the above-entitled cause, the Clerk will enter:

Defendants Hope and Michelle Clough appeal pro se from the trial court's decision in this declaratory-judgment action.  We affirm.

This appeal concerns a dispute over the location, use, and scope of a right-of-way, created in the 1970s, which touches and concerns the parties' property.  Plaintiffs Cris and Cheryl O'Donnell and the Cloughs are adjoining landowners.  The O'Donnells filed suit, seeking a ruling limiting the portions of the right-of-way that the Cloughs can use and determining the scope of limits of the Cloughs' right to use or occupy the right-of-way.  The Cloughs filed various counterclaims.

The court held a bench trial in October 2024 and issued a written order.  It found as follows.  The O'Donnells live on an approximately 1.52-acre parcel in Bradford, Vermont (the O'Donnell lot or Lot 5).  The parcel's southern boundary is bounded by two lots owned by the Cloughs: a 2.14-acre parcel with road frontage (the Clough homestead lot or Lots 1 and 3) and a 0.92-acre parcel of undeveloped land west of the homestead lot (Clough undeveloped lot or Lot 4).  Both of these Clough lots are bounded to the south by lands also owned by the Cloughs.  The Clough undeveloped lot is bounded to the west by an interstate highway; to the east by the Clough homestead lot; and to the north by the O'Donnell lot.  The Clough undeveloped lot does not have any frontage along a public road.

At the boundary between the O'Donnell lot and the Clough homestead lot is a 50-foot-wide right-of-way.  The right-of-way sits entirely on land owned by the O'Donnells.  It runs from Fairground Road, a public highway, west to the end of a neighbor's square-shaped lot; it then turns south and runs along the western boundary of the neighbor's square-shaped lot to the Clough homestead lot.  At the Clough homestead lot, the right-of-way turns west again and runs along the two Clough lots (homestead and undeveloped) to the interstate highway, where it ends.  Parts of the right-of-way are unpaved, a portion of it was improved to the quality of an unpaved

macadam driveway, and the remainder is unimproved grassy land. A portion of the right-of-way serves the O'Donnells' driveway and the O'Donnells have accessed their property over this portion of their land since purchasing their lot in 1985. The evidence showed that only the O'Donnells used the right of way on a regular basis and only those portions that acted as their driveway and access to the public road. Michelle Clough testified at trial that her family occasionally used the right-of-way for large deliveries, such as furniture or appliances, but this use appeared to be limited.

The court described the history of the properties and terms of various deeds in detail. We do not repeat those detailed findings here, except as necessary in connection with the Cloughs' arguments on appeal.

Based on its findings, the court concluded as follows. While there were several deeds and multiple parties buying and selling real estate, the evidence and deed language were fairly straightforward. A subdivision was created in the early 1970s that included the four lots at issue here. In October 1973, two of these lots (Lots 1 and 3), which the Cloughs treated as one homestead parcel, were conveyed to the Cloughs. As part of this conveyance, the grantor also conveyed to the Cloughs a "non-exclusive but perpetual right to use a 50-foot-wide right-of-way" over the lot that was eventually conveyed to the O'Donnells. This created an appurtenant easement, which runs with the land and may be passed along with the dominant estate from owner to owner. This easement was a general right-of-way that was deeded to the Cloughs before the homestead lot was developed. It was a nonexclusive easement, meaning that the Cloughs' right to use the easement could not interfere with other's use of the easement. In light of later deeds, and specifically a February 1975 deed to the predecessor-in-interest for the Clough undeveloped lot (Lot 4), the court found the purpose of this easement could only have been for ingress and egress access or running utilities to the dominant lots.

The O'Donnells agreed that the October 1973 deed created a right-of-way across a portion of their property (Lot 5) for the nonexclusive benefit of the Cloughs. While the evidence showed that the Cloughs had a right to the easement that ran across the O'Donnell lot, the right was limited to the Clough homestead lot. The deeds demonstrated that the Clough undeveloped lot (Lot 4) was initially deeded in February 1975 to the Cloughs' predecessor-in-interest without the easement. As drafted, the deed expressly excluded any easement right running to the lot. This was because the grantees were also taking ownership of adjoining land, which included a driveway that could provide access and utilities to the lot. The Cloughs acquired this lot, as well as adjacent lot to the south, in 2014; this latter lot had provided access to the undeveloped parcel (Lot 4) since the 1975 deed referenced above. The court held that the Clough undeveloped lot did not include any rights to access or benefit from the right-of way on the O'Donnell lot.

The court found its conclusion supported by three legal principles. First, the scope of the easement was limited by its grant and could not be expanded without express permission of the grantor or its successor. The specific limitation on the easement at the time of the initial sale of what became the Clough undeveloped lot was that it had no claim to the right-of-way. Trying to add this lot to the right-of-way through the deeded right in the Clough homestead parcel would expand the original intent of the grantor and overburden the easement and it was not allowed. Second, the lot that became the Clough undeveloped lot was conveyed without a right to the right-of-way on the O'Donnell lot and this held true in subsequent conveyances, including the conveyance to the Cloughs. Third, the February 1975 deed for the undeveloped lot envisioned that access to what became the Clough undeveloped lot would be found from the property to the south. At no time since the February 1975 deed had the lot or the southern parcel been held in

2

separate ownership.  Thus, there could be no argument that the lot needed access to the O'Donnell lot by reason of necessity.  The lot had not been landlocked and it retained a right of access through the parcel to the south of it.  The court therefore held that the Clough undeveloped parcel did not have a right-of-way on the O'Donnell lot as a matter of fact and law.

The court made additional findings about the use and maintenance of the easement that we do not repeat here.  Finally, the court did not award damages to either party and it rejected the Cloughs' counterclaims as lacking evidentiary support.

In its decision, the court noted that in their post-trial findings, the Cloughs included new evidence and additional testimony that was not presented at trial.  The court explained that it could not accept such evidence after the close of the trial short of a showing under Vermont Rule of Civil Procedure 60(b).  It found nothing in the Cloughs' filing to indicate that they could meet this standard.  The court offered additional reasons for rejecting these materials.  This appeal followed.

The Cloughs argue that the court erred in concluding that the right-of-way did not extend to their undeveloped lot.  They contend that the original developer conveyed rights of access of the "existing road" and that a recorded subdivision map shows this road serving multiple lots, including the undeveloped Clough lot.  They also reference an Act 250 permit, which does not appear to be part of the record below, and testimony from Michelle Clough.  The Cloughs assert that there is an unbroken chain of title showing that the unimproved lot has always carried an appurtenant right-of-way.  They reference an August 14, 1973 deed, which appears to be a deed the court found was a mistaken reference to the October 1973 deed for the undeveloped lot.  In a related vein, the Cloughs contend that the court ignored evidence that they presented, and they were thereby deprived of a fair opportunity to prove their case.  They challenge the court's assessment of a witness's credibility.  The Cloughs also argue that the court refused to address evidence about the O'Donnells' alleged interference with and harassment about the right-of-way.

Our "review of a trial court's findings . . . following a bench trial is limited."  Lofts Essex, LLC v. Strategis Floor & Decor Inc., 2019 VT 82, ¶ 17, 211 Vt. 204 (quotation omitted).  The court's factual findings will stand unless they are "clearly erroneous when viewed in the light most favorable to the prevailing party."  Id. (quotation omitted).  "A finding will not be disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support" it.  Id. (quotation omitted).  We "defer to the [trial] court's determinations regarding the credibility of witnesses and . . . the persuasive effect of the evidence."  Id. (quotation omitted).  We will affirm the court's conclusions "where they are reasonably drawn from the evidence presented."  Id. (quotation omitted).

As the trial court recognized, deed interpretation begins with "the language of the written instrument because it is assumed to declare the intent of the parties."  Kipp v. Est. of Chips, 169 Vt. 102, 105 (1999).  If a deed is unambiguous, our inquiry ends, and we "enforce the terms as written without resort to rules of construction or extrinsic evidence."  Sanville v. Town of Albany, 2022 VT 22, ¶ 14, 216 Vt. 368 (quotation omitted).  "The proper construction of a deed is a question of law, which we review de novo."  LeBlanc v. Snelgrove, 2015 VT 112, ¶ 30, 200 Vt. 570; see also Gladchun v. Eramo, 2023 VT 5, ¶ 12, 217 Vt. 481 ("The interpretation of an express easement is a question of law, which we review de novo." (quotation omitted)).

The Cloughs fail to show that the court erred in interpreting the deeds in question and reaching its conclusion about the right-of-way.  As an initial matter, they largely fail to provide record citations in support of their assertions or show how their arguments were preserved.  See

3

In re S.B.L., 150 Vt. 294, 297 (1988) (explaining that appellant bears burden of demonstrating how trial court erred warranting reversal); see also V.R.A.P. 28(a)(4) (stating that appellant's brief should explain what issues are, how they were preserved, and what appellant's contentions are on appeal, with citations to authorities, statutes, and parts of record relied upon). They do not identify with specificity many of the documents to which they refer, which would allow the Court to find them in the record. We "will not comb the record searching for error." In re S.B.L., 150 Vt. at 297.

In any event, the language of the deed to the land that became the Cloughs' undeveloped lot plainly does not include access to the right-of-way. The deed states this expressly. It provides:

> Since the within conveyed Lot No. 4 adjoins premises now owned by the said Coles [the Cloughs' predecessor-in-interest] as aforesaid, the right of way easement shown on said plan adjoining the within conveyed property on the north is not conveyed herein and any future desire on the part of the grantees, their heirs and assigns, for water service for the parcel herein conveyed shall be obtained by them through separate negotiations with the Bradford Water Commission.

(Emphasis added.) The deed language is unambiguous and its terms must be enforced as written.

The Cloughs appear to argue that the 1973 conveyance of the homestead parcel included a right-of-way for a lot that they had not yet purchased. The basis for this assertion is unclear and we reject it. To the extent that they argue that the deed language regarding Lot 4 above is ambiguous, they fail to show that the documents they reference were accepted into evidence at trial, or that they relate to the "circumstances surrounding the making of the agreement," and create an ambiguity. See LeBlanc, 2015 VT 112, ¶ 31 (explaining that ambiguity exists in deed when "reasonable people could differ as to its interpretation," and "[i]n determining whether a deed is ambiguous, the court may examine limited extrinsic evidence of circumstances surrounding the making of the agreement" (quotations omitted) (emphasis added)). The subdivision survey map that they appear to reference, for example, was dated May 1975. The court noted that there were references in the chain of title for the undeveloped lot to other quitclaim deeds between the then-grantor and other parties involving rights-of-way, but these transfers dated back to 1966 and did not appear to concern the undeveloped lot as the grantors did not own or have rights to the parcel at that time. The Cloughs fail to show that the court erred in concluding that the undeveloped lot did not have a right-of-way across the O'Donnell's property.

The Cloughs next argue that the court should have found that the undeveloped lot had an implied easement by necessity and historical use. They assert that the necessity existed at the time the lot was conveyed. The court expressly found otherwise, and its decision is supported by the record. We reject the Cloughs' assertion that the parcel is unusable and that their property has been taken without just compensation. With respect to their assertion that their historical use of the right-of-way created an implied easement, the court found no such historical use aside from occasional package deliveries.

The Cloughs next assert they acquired a prescriptive easement though open, notorious, adverse, and continuous use for fifteen years. It is not apparent that this argument was raised

below.  In any event, as stated above, the court found that their use of the right-of-way was minimal.

The court found no basis to award damages to either party.  It recognized that the parties had been at odds for several years over the scope, use, and meaning of the right-of-way.  It found that neither party committed substantial physical damage to the other's property, and rejected the Cloughs' claim to the contrary.  The court explained that the Cloughs failed to link their assertions about water damage and drones to the O'Donnells.  It found that the sole link was their suspicion that only the O'Donnells would wish them harm or seek to harass them, but this did not suffice to meet their burden of establishing such claims.  The court's conclusion is supported by its findings and the record.  We leave it to the trial court to weigh the evidence and assess the credibility of witnesses.  See Lofts Essex, LLC, 2019 VT 82, ¶ 17.

We have reviewed all of the arguments discernable in the Cloughs' brief, including claims that the court overlooked or refused to consider evidence they believed was relevant, and we reject these arguments as without merit.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
William D. Cohen, Associate Justice


_____
Nancy J. Waples, Associate Justice

5