2011 VT 52

Jonathan TIBBETTS and Marlene G. Tibbetts v. Demetrios MICHAELIDES, Alexandria Michaelides, Erwin Waibel and Ramona Waibel

[24 A.3d 581]

No. 10-349

¶ 1. May 16, 2011. In this dispute between neighboring landowners, defendants appeal from a superior court order rejecting their claim that plaintiffs violated a deed restriction limiting the number of houses to be constructed on the property. Among other claims, defendants contend the trial court erred in concluding that they lacked standing to enforce the restriction. We affirm.

¶ 2. The undisputed material facts may be summarized as follows. In December 1977, Lydia Lowell and several related owners (hereafter "Lowell") conveyed two parcels of land totaling five acres to J. Peter Trono. The deed described Parcel I as consisting of 4.70 acres with an eastern border along Brigham Road, which is located in the Bartletts Bay area of the City of South Burlington. Parcel II was described as containing 0.3 acres situated on the opposite side of Brigham Road from Parcel I. The deed recited that the conveyance was subject to certain "rights in favor others," notably a right-of-way over a footpath for the use of other Camp Bartlett property owners to access Lake Champlain, and granted certain other rights, specifically use of the "aforesaid footpath" to the lake as well as the use, in common with others, of a strip of land along the lake "for purposes of bathing and the storage of one dinghy." In addition, the deed provided:

> It is a condition of this conveyance that the style and design of

houses constructed upon the lands hereby conveyed shall be compatible and harmonious with the style and design of present houses in the general area and that no more than five single-family houses shall be constructed upon the lands hereby conveyed, this being the maximum number of houses permitted by the South Burlington zoning ordinance presently in effect.

¶ 3. In July 1978, Trono conveyed the two parcels by quitclaim deed to his construction company, Trono Construction, Inc., which obtained approval for a five-lot residential subdivision on the west side of Brigham Road. Trono subsequently sold all five lots for the construction of homes, including two to defendants (hereafter "neighbors"). Trono failed to pay property taxes on the small parcel located on the east side of Brigham Road, and it was sold at a tax sale to Ronald Charlebois. In July 2002, Charlebois conveyed the property to plaintiffs, who then applied to the city for a variance to allow them to construct a house on the lot that was otherwise too small to meet setback requirements. The city granted the variance, and plaintiffs constructed a house on the property in 2003.

¶ 4. When plaintiffs attempted to sell the property in 2005, however, the potential buyers discovered the five-house restriction in the Lowell-to-Trono deed and required consent of the owners of the five other houses as a condition of the sale. Neighbors refused to consent, and plaintiffs thereupon filed this declaratory judgment action to clear the property of the restriction and obtain marketable title. Neighbors answered and counterclaimed for a declaration that plaintiffs' residence violated the deed restriction, and an injunction requiring its removal.

¶ 5. The parties filed cross-motions for summary judgment. In March 2010, the trial court issued a written ruling in favor of plaintiffs. The court concluded that the five-house restriction in the Lowell-to-Trono deed was intended to benefit the land retained by Lowell, not the land conveyed to Trono or his subsequent successors and assigns, and that neighbors therefore lacked standing to enforce it. The court issued a final judgment order in May 2010, and denied a motion for reconsideration the following July. This appeal followed.

¶ 6. The essential question presented, as the trial court recognized, is which estate the parties to the Lowell-to-Trono deed intended to benefit from the five-house restriction. It is axiomatic that "[t]he intent of the parties determines which estates or servitude interests are burdened or benefited by a servitude" and that such intent may be either express or "inferred from the circumstances." Restatement (Third) of Property: Servitudes § 2.5 cmt. a (2000); see *Madkour v. Zoltak*, 2007 VT 14, ¶ 14, 181 Vt. 347, 924 A.2d 11 ("To determine which property is burdened by the restrictive covenant . . . , we must look to the language of the deed itself and consider [the grantor's] intent in the context within which she conveyed the property."). We review the trial court's construction of the deed de novo. *Cameron's Run, LLP v. Frohock*, 2010 VT 60, ¶ 12, 188 Vt. 610, 9 A.3d 664 (mem.).

¶ 7. Construing the deed as a whole and the circumstances of its making, the trial court here concluded that the restriction was intended solely to benefit the land retained by Lowell, so that defendants had no standing to enforce it. We agree. Although the deed does not expressly identify the restriction's intended beneficiary, there was no dispute that, as the trial court found, Lowell retained substantial property "surrounding the five-acre parcel." As the court further observed, a basic interpretive rule is that — absent evidence of an intent to the con-

trary — a restriction relating to the use of a portion of land sold by a grantor is generally presumed to be intended for the benefit of the land that the grantor has retained. See, e.g., *Contegni v. Payne*, 557 A.2d 122, 124-25 (Conn. App. Ct. 1989) (reaffirming principle that covenant exacted from grantee must be viewed as "presumptively . . . for the benefit and protection of his adjoining land which [the grantor] retaine[d]" (quotation omitted)); *Sofran Peachtree City, L.L.C. v. Peachtree City Holdings, L.L.C.*, 550 S.E.2d 429, 432 (Ga. Ct. App. 2001) (holding that evidence failed to "rebut the presumption that the . . . restriction was imposed for the benefit of the land retained by [grantor] after the sale"); see generally M. Brunner, *Who May Enforce Restrictive Covenant or Agreement as to Use of Real Property*, 51 A.L.R.3d 556, 595 (1973) ("Where the owner of realty sells a portion thereof, imposing on his vendee restrictions relating to the use of the estate conveyed, there is a presumption, in the absence of any facts and circumstances showing a contrary intent, that the restriction is imposed for the benefit of the land retained."); see also *Chimney Hill Owners' Ass'n v. Antignani*, 136 Vt. 446, 452, 392 A.2d 423, 427 (1978) (holding that developer's retention of common lands showed that "the intent of the [assessment] covenant was to benefit" developer and not "the lot owners in [general]" who therefore lacked authority to enforce it).

¶ 8. The trial court also correctly rejected neighbors' assertion that the five-house restriction was intended to benefit the land conveyed to Trono as part of a general development scheme, so that any of Trono's subsequent grantees — including neighbors — could enforce it against any other. See *Creed v. Clogston*, 2004 VT 34, ¶ 20, 176 Vt. 436, 852 A.2d 577 (noting that under general plan development "individually owned lots or units are burdened by a servitude imposed to effectu-

ate a plan of land-use controls for the benefit of the property owners in the development or neighborhood" (quotation omitted)). The deed itself gave no indication that it was intended to benefit the land conveyed as opposed to the land retained; it merely stated that the five-house restriction reflected the maximum number of houses allowed under the existing zoning regulations. Furthermore, the grantor, Lowell, recorded no declaration of covenants and restrictions applicable to the tract as a whole, which we have identified as a formal prerequisite to finding a general plan development. *Patch v. Springfield School Dist.*, 2009 VT 117, ¶ 11, 187 Vt. 21, 989 A.2d 500. The deed did provide, to be sure, that the "style and design" of the houses to be constructed on the parcel "shall be compatible and harmonious" with that of "present houses in the general area." Standing alone, however, this proviso falls well short of demonstrating an intent to create a common improvement scheme for the implied benefit of all of the subsequent grantees. Indeed, the provision is more generally consistent with an intent to benefit Lowell by ensuring that any new houses built were compatible with the design and style of the existing "present houses" in her neighborhood and the balance of the property that she owned and retained.

¶ 9. Nor did the Lowell-to-Trono deed require that all subsequent conveyances include the five-house limitation, and none of the later conveyances expressly referenced the restriction. Cf. *Rogers v. Watson*, 156 Vt. 483, 488, 594 A.2d 409, 412 (1991) (observing that "inclusion of the restriction in most, if not all, other deeds from the [grantor] shows an intent to create a common development scheme"); *Welch v. Barrows*, 125 Vt. 500, 503, 218 A.2d 698, 702 (1966) (holding that record showed grantor's intent to benefit all purchasers of shore lots "by the inclusion of the covenants in the several subsequent deeds"). The deed to the Waibels

incorporated "all those rights which were conveyed to J. Peter Trono from Lydia Lowell" without any specification of the "rights" contemplated. That the rights they had in mind, however, were solely those associated with beach access is strongly indicated by the slightly later deed to the Michaelides, in which the only reference to the Lowell deed is a provision specifically granting the Michaelides "in common with others certain beach rights conveyed to the grantor by warranty deed of Lydia B. Lowell."

¶ 10. In reaching its decision the trial court also relied on the affidavit of J. Peter Trono, the original grantee, in which he stated his "understanding as purchaser" that the five-house restriction "did not reflect a plan or scheme of development intended to create reciprocal negative easements on the lands conveyed to me by Lowell." While the affidavit can speak only to Trono's understanding of the parties' intentions, it is strongly persuasive to that extent, and neighbors adduced no equivalent evidence of a contrary intention on the part of Lowell. A second Trono affidavit provided at neighbors' request confirms his understanding that plaintiffs' lot was not buildable under a state land use permit issued in August 1978, but does not speak to or contradict his understanding that there was no intent to create mutual or reciprocal obligations enforceable by subsequent grantees. Accordingly, we find no basis to disturb the judgment that neighbors were not benefitted by the restriction, and therefore lacked standing to enforce it.

¶ 11. Neighbors' remaining claims require no extended discussion. They assert that the trial court lacked subject matter jurisdiction "to collaterally review" the municipal zoning permit limiting the development to five houses. Neighbors neither clearly raised this claim below nor introduced the relevant evidence relating to the permit in the trial record. Accordingly, even if exempt from the usual preservation requirement under the rule that subject-matter jurisdiction may be raised at any time, *Bischoff v. Bletz*, 2008 VT 16, ¶ 15, 183 Vt. 235, 949 A.2d 420, the record is simply insufficient to review the claim.*

¶ 12. Neighbors also contend they are entitled to a declaratory judgment that plaintiffs do not enjoy the same rights and benefits relating to beach access as neighbors and the other home owners in the area. The trial court properly declined to address the issue, however, noting that it was not raised in neighbors' answer or counterclaim and was mentioned only briefly for the first time in their cross-motion for summary judgment. See *Progressive Ins. Co. v. Brown*, 2008 VT 103, ¶ 8, 184 Vt. 388, 966 A.2d 666 (holding that proper preservation of issue requires that it be presented with "specificity and clarity" to ensure that trial court is given adequate opportunity to render informed decision). For the same reason, we reject neighbors' assertion that they are entitled to a remand for the trial court to consider whether plaintiffs' house violates the state subdivision permit. The issue was not raised below, and is not cognizable on appeal. *Id.* We thus discern no basis to disturb the judgment.

*Affirmed.*

---

* There is record evidence of the town's desire to limit development of the parcel to five houses. As noted, this is reflected in the original deed's reference to the zoning limitations then in effect, as well as an August 1978 letter from Trono's attorney to the city's planning administrator suggesting — apparently as the town's request — that lots 1A and 1B might be sold together subject to a covenant to run with the land prohibiting the construction of a residence on the smaller lot. There is no evidence that this covenant was placed in any deed, nor any record evidence that it was reflected in any zoning permit.