ROBINSON, J.
¶ 1. Plaintiff Alpine Haven Property Owners' Association, Inc. (AHPOA) appeals from the trial court's decision in its collection action against defendant-homeowners Harry and Lynette Brewin. In awarding judgment to AHPOA, the court calculated what it considered a reasonable annual fee that AHPOA could charge defendants for services it provides, including garbage pickup and road maintenance. As set forth below, we conclude that the court erred in replacing AHPOA's fee with its own given the absence of any evidence to show that AHPOA acted in bad faith or that its fee was unreasonable. We reverse the court's decision and remand for entry of a final judgment order consistent with this opinion.
¶ 2. Defendants live in Alpine Haven, "a sprawling subdivision located along Vermont Route 242 in the Towns of Montgomery and Westfield." Khan v. Alpine Haven Prop. Owners' Ass'n, 2016 VT 101, ¶ 1, 203 Vt. 251, 153 A.3d 1218 (recounting development of Alpine Haven in detail); see also Alpine Haven Prop. Owners Ass'n v. Deptula, 2003 VT 51, ¶¶ 2-3, 175 Vt. 559, 830 A.2d 78 (mem.) (same). Development of Alpine Haven began in the 1960s and it now contains about ninety-two units, including "more than eighty-five lots with homes, several undeveloped or 'large lots,' several lots with some commercial activity, and three lots that AHPOA owns and maintains as common land for various purposes." Khan, 2016 VT 101, ¶ 10, 203 Vt. 251, 153 A.3d 1218. There are "4.5 miles of roads within the development," and "[a]lmost all of the lot[ ] owners depend on the private roads to access their property." Id.
¶ 3. AHPOA is a Vermont nonprofit corporation run by volunteers. In 1998, the original developers of Alpine Haven conveyed to AHPOA "ownership of, and all of the maintenance and service-provision responsibilities for, the road network, snowplowing, street lights and garbage disposal." Id. ¶ 22. Several years later, AHPOA sought to take advantage of the newly *535 enacted Vermont Common Interest Ownership Act (VCIOA), 27A V.S.A. §§ 1-101 - 4-120. AHPOA declared Alpine Haven to be a common interest community (CIC) subject to, and capable of, invoking the provisions of the Act. See Khan, 2016 VT 101, ¶ 23, 203 Vt. 251, 153 A.3d 1218. This led to litigation, discussed in more detail below.
¶ 4. This case began in June 2012. AHPOA sued defendants, alleging that they had not paid their annual assessments for common expenses since September 2009.[1] In particular, AHPOA claimed that defendants owed it $14,688 for assessments between 2010 and 2016.[2] Defendants represented themselves in the trial court. The court tried the case in two parts. It first considered if Alpine Haven was a CIC under VCIOA and if AHPOA's governance documents were properly adopted. Following a one-day bench trial in November 2014, the court concluded that Alpine Haven was a preexisting CIC that fell within the VCIOA but that certain amendments to Alpine Haven's declaration and bylaws were procedurally defective and void. The court stayed its ruling on the reasonableness of AHPOA's fees pending a status conference. The court explained that there was a case awaiting trial ( Khan ) that involved a similar question and it did not want to interfere with those parties' efforts to settle their dispute.
¶ 5. Meanwhile, the trial court in Khan issued an interlocutory ruling similarly concluding that Alpine Haven was a preexisting CIC for purposes of VCIOA. The plaintiffs in that case appealed to this Court and we reversed in September 2016. We held that "[w]hile it might seem apparent in hindsight that Alpine Haven 'has become' a CIC, we cannot see how it would have been apparent to certain early buyers, at the time of their purchase, that their lots were part of a CIC." Id. ¶ 37. We directed the trial court, on remand, to address the basis on which AHPOA could "calculate the fees for deeded services it has provided to each of the plaintiffs' properties." Id. ¶ 40. The Khan proceedings are ongoing.
¶ 6. Given our ruling in Khan, the trial court in this case no longer relied on the VCIOA and instead focused on the terms of defendants' deed. Following a second evidentiary hearing in November 2016, the court made the following findings. Defendants' lot was created in 1963. Defendants purchased their lot in May 1994. Defendants' deed provides:
There is also hereby conveyed a right-of-way leading from the main highway along the road as now traveled to the above described premises.
There is also granted the right to take water as now piped to the above premises.
The grantor hereby agrees to keep and maintain said right-of-way in a good reasonable state of repair and agrees to supply water to said premises as now piped and it agrees to supply garbage removal for said premises and to maintain the streetlights in the area of said premises as now in existence. These services to be at a fee to be determined by the grantor.
Defendants were members of AHPOA until November 2011 when they withdrew.
*536 Defendants refused driveway plowing, which is not mentioned in their deed, beginning in 2016.
¶ 7. The court found that defendants' deed created a limited contract that required AHPOA to provide certain services and allowed AHPOA to charge a fee for these services as it might determine. Citing Duchaine v. Zaetz, the court reasoned that because the deed did not identify a specific fee, the law implied that the fee must be "reasonable." See 114 Vt. 274, 276, 44 A.2d 165, 167 (1945) ("When labor and materials are furnished under a contract silent as to the amount to be paid therefor, the law implies that they are to be settled for at a reasonable rate. The prevailing charges for such work tend to show what the reasonable rate is." (citation omitted) ). The court concluded that a reasonable charge could include overhead but not "extraordinary" overhead.
¶ 8. The court also rested its analysis in part on the common-law obligation of those sharing a common right-of-way to contribute to road-maintenance costs. See Hubbard v. Bolieau, 144 Vt. 373, 375, 477 A.2d 972, 973 (1984) (recognizing longstanding "equitable principle that when several persons enjoy a common benefit, all must contribute rateably to the discharge of the burdens incident to the existence of the benefit" (quotation omitted) ); see also 19 V.S.A. § 2702 ("In the absence of an express agreement or requirement governing maintenance of a private road, when more than one person enjoys a common benefit from a private road, each person shall contribute rateably to the cost of maintaining the private road, and shall have the right to bring a civil action to enforce the requirement of this section.").
¶ 9. The court applied these legal rules to AHPOA's assessments. AHPOA hires people to plow and repair the roads and to remove garbage. It owns trucks and other equipment for this purpose. AHPOA also operates various recreational facilities within the development, which are billed separately to members who use them. AHPOA submitted a spreadsheet that outlined its expenses. The court found that AHPOA based its assessments on the amount needed to cover its expenses for road maintenance, snow removal, trash removal, streetlights (electricity), as well as accounting, litigation, and other administrative costs.
¶ 10. The court then calculated a "reasonable" annual assessment to cover these costs from scratch. It found $340 to be a reasonable annual charge for trash removal and $200 a reasonable annual charge for plowing an uncomplicated driveway like that owned by defendants. The court divided the cost of providing electricity for Alpine Haven's fourteen streetlights ($3750 not including overhead) equally among unit owners, resulting in an annual cost of approximately $45 per owner.
¶ 11. Turning to the cost of maintaining the roadway, the court reasoned that defendants were not responsible for contributing to the maintenance of the entire road system because they had been deeded only a small portion of the right-of-way. Based on evidence of AHPOA's own per mile costs for maintaining its roads (not including overhead), as well as evidence of the per-mile cost incurred by the Town of Montgomery in maintaining its roads, the court found that a reasonable expense for maintaining a mile of road was around $9000. Because defendants' deeded way appeared to be three-tenths of a mile long, the court calculated that the expense of maintaining that roadway was $2700. Because the court concluded that under the common interest line of cases defendants are only accountable for "a rateable share of expenses," the court divided that $2700 cost among the twenty-four lots it found *537 were served by the road between the main road and defendants' property and concluded that the reasonable expense to defendants for maintaining their right-of-way over the roadway was $100. Adding in the cost of plowing the road, the court estimated the cost to be closer to $150 per year. Ultimately, apparently including some overhead, the trial court assigned an annual obligation of $500 for road maintenance and plowing.
¶ 12. The court acknowledged that in 1992 a different trial court found that AHPOA's annual assessment of $1200 for road maintenance, street lights, garbage pickup, and plowing was reasonable, see Deptula, 2003 VT 51, ¶ 12, 175 Vt. 559, 830 A.2d 78, and that when this number was adjusted for inflation using the Consumer Price Index, it resulted in a sum comparable to AHPOA's current assessment of $2027. Nonetheless, the court concluded that "given the modest right of way" in defendants' deed, their obligation to pay the assessed amount could not be enforced.
¶ 13. The court thus determined that the reasonable charge for each of the years following defendants' withdrawal from AHPOA in November 2011 was $1085, which reflected: $500 for road maintenance; $340 for trash service; $45 for streetlight/electric expense; and $200 for driveway plowing (for the years during which AHPOA plowed defendants' driveway). The court also approved the $150 additional annual fee, which it believed to be a water bill. The court acknowledged the chaotic effect its decision would likely have on AHPOA's billing process but reiterated its belief that it was unreasonable for defendants to contribute to road maintenance for the entire subdivision. Both parties moved for reconsideration, which the court denied with one exception. The court acknowledged that it had mislabeled the $150 fee as a water fee when it was properly considered as a reserve fee for emergencies.[3] AHPOA appealed from the court's order.
¶ 14. AHPOA asserts that the court failed to give effect to defendants' deed, which allows AHPOA to determine the formula for calculating fees. AHPOA maintains that its fee structure, which is based on the cost of providing the services in question and which broadly reflects their market value, is reasonable. AHPOA further argues that it is fair to require defendants to contribute toward the expenses of the subdivision's entire private road network, including overhead, rather than simply paying a pro rata fee for a short portion of the right-of-way. According to AHPOA, there was no evidence presented at trial to refute the reasonableness of its fee nor did the court make any finding to this effect. Thus, it argues that the court erred in replacing its annual fee as if it were unreasonable.
¶ 15. We agree with AHPOA. First, the analysis in this case begins and ends with the provisions in defendants' deed, which allow AHPOA to set the fees, subject to the constraints of good faith and fair dealing. Insofar as the trial court based its analysis on contract principles that apply when a price term is omitted or equitable principles of rateable contribution, it applied the wrong legal framework. Second, given the evidence here, as a matter of law the fees assessed by AHPOA fall within the range of reasonable assessments authorized by the deed.
*538 ¶ 16. The legal framework here is set by defendants' deed. We review the trial court's interpretation of defendants' deed without deference. See Tibbetts v. Michaelides, 2011 VT 52, ¶ 6, 190 Vt. 520, 24 A.3d 581 (mem.) (explaining that this Court reviews trial court's construction of deed without deference to trial court). Defendants' deed provides that the grantor shall provide certain services, including maintaining defendants' right-of-way, "at a fee to be determined by the grantor." This deed expressly gives AHPOA the right to determine the fee to be charged to defendants for the services provided. "When an agreement is clear and unambiguous," we will enforce it according to its terms. In re West, 165 Vt. 445, 450, 685 A.2d 1099, 1103 (1996).
¶ 17. This deed does not omit a price term that must be supplied by the trial court as in Duchaine, 114 Vt. at 276, 44 A.2d at 167. Instead, it assigns responsibility for setting the price to the grantor-AHPOA's predecessor in interest. Nor does this case require us to apply the equitable principle of rateable contribution, since the deed reflects an express agreement with respect to the cost of maintaining the right of way. See Hubbard, 144 Vt. at 375-76, 477 A.2d at 973 ("The obligation to contribute [rateably to the discharge of burdens incident to the common benefit] applies in the absence of an express agreement ...."); see also 19 V.S.A. § 2702 ("In the absence of an express agreement or requirement governing maintenance of a private road, when more than one person enjoys a common benefit from a private road, each person shall contribute rateably to the cost of maintaining the private road ...." (emphasis added) ).
¶ 18. That does not mean that AHPOA can set unreasonable rates with abandon. In calculating an appropriate fee, AHPOA is subject to the implied covenant of good faith and fair dealing. See Carmichael v. Adirondack Bottled Gas Corp. of Vt., 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) ("An underlying principle implied in every contract is that each party promises not to do anything to undermine or destroy the other's rights to receive the benefits of the agreement."). The implied covenant of good faith and fair dealing "ensure[s] that parties to a contract act with 'faithfulness to an agreed common purpose and consistent[ly] with the justified expectations of the other party.' " Id. (quoting Restatement (Second) of Contracts § 205 cmt. a (1981) ). "The implied promise by its nature protects against 'a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness.' " Id. at 208-09, 635 A.2d at 1216 (quoting Restatement (Second) of Contracts § 205 cmt. a).
¶ 19. Accordingly, deciding if AHPOA's assessments are consistent with this contractual requirement does not call for the trial court to make its own determination of what fee would be most reasonable. Instead, the appropriate question is whether defendants demonstrated that AHPOA violated the covenant of good faith and fair dealing in establishing its assessment and, in particular, whether the fee that AHPOA charged fell beyond the bounds of reasonableness.[4]
*539 ¶ 20. While "good faith is ordinarily a question of fact," Carmichael, 161 Vt. at 209, 635 A.2d at 1217, the record here supports a decision in AHPOA's favor as a matter of law. See Deptula, 2003 VT 51, ¶ 10, 175 Vt. 559, 830 A.2d 78 (concluding, as a matter of law, that fees assessed by AHPOA were reasonable). Defendants did not establish that AHPOA violated the "community standards of decency, fairness or reasonableness" that the covenant of good faith and fair dealing seeks to protect. Carmichael, 161 Vt. at 209, 635 A.2d at 1216 (quotation omitted). AHPOA presented substantial evidence to support the reasonableness of its assessment, defendants presented no evidence of bad faith, and defendants' two primary counterarguments-they should only be accountable for their share of that portion of the Alpine Haven road network that is coextensive with their right-of-way and that they should not be compelled to share in the full cost of the overhead associated with AHPOA's performance of its duties-do not compel a contrary result.
¶ 21. AHPOA presented substantial evidence to support the reasonableness of its assessment. Several AHPOA board members testified to the fee-calculation process. The first board member, who had an M.B.A. and a background in business operations, explained that the fee, roughly speaking, covered the total outlay of expenses, including overhead expenses. The total expenses were broken down by category and a three-year average was calculated. The total average annual expense was $175,352, approximately fifty percent of which was overhead. The biggest portion of the overhead was legal expenses. The board member also testified that AHPOA charged a $150 reserve fee to enable it to address emergencies.
¶ 22. The board member explained that it was not feasible, cost-effective, or reasonable, to charge homeowners a different fee depending on their actual use of common elements such as streetlights and roads. Such an approach, he testified, would be difficult and expensive to administer and it would result in frequent challenges by dissatisfied homeowners, further driving up costs. At a status conference before the court, Mr. Brewin agreed that such an individualized approach would be impractical and would lead to additional litigation.
¶ 23. Through other witnesses, AHPOA also provided evidence concerning the expenses associated with garbage pickup and snowplowing, including the market rate for such services. One of its witnesses also described in detail the various services required to maintain the subdivision's roads, including snowplowing and sanding, as well as road repair, which involved putting down gravel, grading, filling in potholes, repairing culverts, cleaning and digging ditches, and removing trees and bushes from the right-of-way. The witness highlighted the various costs associated with providing these services, including the cost of maintaining service vehicles, hiring vehicle operators, and paying insurance, including workers' compensation insurance. AHPOA's witness testified that while road maintenance provided the greatest expense to unit owners, it also provided them with the greatest benefit. He expressed his belief the road-maintenance portion of the fee was reasonable as it reflected AHPOA's actual costs and he saw *540 no feasible way to reduce these costs. This witness also testified to the reasonableness of the overhead charged, noting that in his experience reasonable overhead could be twice as high as that here.
¶ 24. The trial court found that AHPOA's assessment reflected its expenses and we have deemed the precise approach taken by AHPOA-an annual fee based on actual costs plus overhead-to be reasonable. See Deptula, 2003 VT 51, ¶ 17, 175 Vt. 559, 830 A.2d 78 (explaining that where deeds required payment of reasonable annual fee, AHPOA was "not limited to charging only costs, but may assess a reasonable fee for its services"). Indeed, we deemed AHPOA's annual fee itself to be reasonable in Deptula, id., and AHPOA charges essentially the same fee now, adjusted for inflation. While not dispositive, this supports the conclusion that AHPOA's fee is reasonable here.
¶ 25. For their part, defendants did not present any evidence of bad faith and have never contended that AHPOA is making some sort of profit through the annual assessments. Instead, they rely primarily on two arguments: First, because their right-of-way applies to only three-tenths of a mile of roadway, AHPOA may not charge them for a share of the costs of maintaining the roadways in their entirety. Second, AHPOA cannot allocate to them a share of excessive overhead, particularly litigation expenses. Neither argument is availing here.
¶ 26. As to the first issue, AHPOA explained why it made no administrative sense to tie each unit owner's assessment to the specific distance between the main road and the unit owner's property. We need not grapple with the legal question raised by defendants-whether AHPOA can compel defendants to pay a share of the costs of maintaining the entire roadway system in the subdivision when defendants' deed obligation to pay for road maintenance applies only to defendants' deeded right-of-way. Although AHPOA's method of calculating defendants' assessment in this case involves an allocation of the total costs of maintaining the Alpine Haven roadways, the actual assessment is within the bounds of reason even with reference only to defendants' right-of-way.
¶ 27. As noted above, the trial court found, based on evidence presented by AHPOA, that a reasonable expense for maintaining a mile of road was around $9000. Defendants appear to agree that this sum is reasonable. Using the trial court's figure, a reasonable cost for maintaining the three-tenths-of-a-mile right-of-way provided in defendants' deed is $2700. This is the benchmark against which the reasonableness of AHPOA's assessment should be measured. The trial court allocated this sum among multiple property owners who share use of the same roadway, but that allocation is not required to meet the basic requirements of fairness. To the extent that AHPOA is able to lower its actual maintenance costs by pooling resources and sharing obligations among its members, it has no obligation to pass these savings onto defendants who are not AHPOA members. AHPOA charges defendants much less, further supporting the conclusion that the road-maintenance portion of the annual fee charged to defendants is reasonable.
¶ 28. Defendants also failed to establish that AHPOA acted in bad faith by including its overhead costs in its annual assessment. Again, as noted above, AHPOA's assessment is far lower than the undisputed costs of maintaining defendants' right of way itself. Moreover, in discussing the extent to which AHPOA could recoup its overhead, the trial court distinguished between ordinary and extraordinary overhead; it concluded that the *541 former, but not the latter, could be passed along to defendants through an assessment. But the question is not whether the overhead expenses were extraordinary; if anything, it is whether they were unreasonable. Overhead can be extraordinary, whether due to an emergency, litigation costs, or some other event, without being unreasonable. Cf. Deptula, 2003 VT 51, ¶ 25, 175 Vt. 559, 830 A.2d 78 (concluding that it was reasonable for AHPOA to divide costs of loan to repair flood-damage roads pro rata among all who lived along common right-of-way).
¶ 29. While litigation-related expenses formed a large part of the overhead costs here, there was no showing that this cost was unreasonable. Certainly, there has been a lack of clarity regarding Alpine Haven's status as a CIC, and our decision in Khan, 2016 VT 101, 203 Vt. 251, 153 A.3d 1218, which reversed several trial court rulings, understandably led to additional litigation over fee issues. There is no showing that the litigation was frivolous or somehow unnecessary. To the contrary, the litigation appears to benefit homeowners within Alpine Haven by providing certainty going forward, thereby reducing costs and the risk of future litigation. It is also reasonable for AHPOA to pursue litigation to collect unpaid dues as it needs these funds to function. See Kaanapali Hillside Homeowners' Ass'n v. Doran, 145 P.3d 899, 906 (Haw. Ct. App. 2006) (explaining that "[r]esidential communities ... are 'analogous to mini-governments' and as such are dependent on the collection of assessments to maintain and provide essential and recreational facilities").
¶ 30. We thus conclude, as a matter of law, that AHPOA did not breach the covenant of good faith and fair dealing in determining the fee charged to defendants for its services. We therefore reverse and remand the trial court's decision for entry of a final judgment order reflecting the sums defendants owe AHPOA consistent with this opinion.[5]
Reversed and remanded for entry of a final judgment order consistent with this opinion. The court should deduct $200 for the portion of fees attributable to the driveway snowplowing for 2016, the year that defendants first declined this service.

Defendants filed counterclaims against AHPOA, but the court granted judgment to AHPOA on these claims and defendants did not file a cross-appeal.

The 2010 and 2011 assessments were $1600, which increased to $2027 as of 2012. AHPOA also charged defendants $150 per year for what the court mistakenly believed were water bills. Defendants made some payments in November 2012 and May 2013.

Although the court approved this $150 reserve fee, AHPOA argues on appeal that the court failed to add this $150 to the total annual assessment it approved, and upon which the court's judgment was based. Because we reverse on other grounds, we need not address this issue.

We note that a similar standard would have applied had Alpine Haven been deemed a preexisting CIC subject to VCIOA. See 27A V.S.A. § 1-113 (imposing "obligation of good faith on all parties" in performing or enforcing duties or contracts governed by VCIOA and noting that this provision "sets forth a basic principle running throughout this Act: in transactions involving common interest communities, good faith is required in the performance and enforcement of all agreements and duties," and "[g]ood faith ... means observance of two standards: 'honesty in fact,' and observance of reasonable standards of fair dealing"); id. § 1-108 (stating that "principles of law and equity, including the law of corporations, ... the law of real estate, [and] the law of contracts ... supplement the provisions of this title, except to the extent that these principles are inconsistent with the title").

The AHPOA assessment includes some sum attributable to the service of plowing defendants' driveway-a service that is not contemplated in the deed and which defendants have declined. The trial court found that the reasonable cost of this service is $200 annually and plaintiff has not challenged that finding. Accordingly, the court's judgment shall deduct $200 from the annual AHPOA fee for 2016, the year that defendants first declined driveway snowplowing services.